[Nos. 14835, 14880.   Department One.   June 27, 1918.]

*In the Matter of* LOUISE CHARTRAND.[1]

INFANTS — DELINQUENCY — CUSTODY — JURISDICTION OF COURTS— HABEAS CORPUS.   A superior court has power to commit a delinquent child to the custody of an institution without the county and still retain exclusive jurisdiction over the child; in view of Rem. Code, §§ 1987-1, 1987-2, and 1987-5, which makes a delinquent the ward of the superior court, and Id., §§ 1987-8 to 1987-10, conferring continuing jurisdiction upon a superior court to make any order for the custody and control of a delinquent minor necessary for its welfare; hence habeas corpus may issue from such court to inquire into the legality of such custody.

Consolidated appeals from orders of the superior courts for Chelan and King counties, Grimshaw and Jurey, JJ., entered March 7 and 14, 1918, denying petitions for a writ of habeas corpus. Reversed on Chelan county appeal; affirmed on King county appeal.

*C. B. Conner,* for appellant.

*Burt J. Williams,* for respondent.

TOLMAN, J.—The appellant, on the 7th day of March, 1918, presented her petition for a writ of habeas corpus to the superior court of Chelan county, alleging in effect:   That she was unlawfully imprisoned and restrained of her liberty by the mother superior of the Home of the Good Shepherd, in the city of Seattle, King county, Washington; that the cause, or pretended cause, of such restraint was an order made and issued

[1]Reported in 173 Pac. 728.

by the said court "In the Matter of the Delinquency of Louise Chartrand," an action then pending in said court on the 27th day of June, 1917. And then follows allegations purporting to show that such order of restraint was and is void.

On the presentation of the petition, the superior court declined to consider or pass upon the petitioner's right to the writ, upon the ground and because it appeared in the petition "that the petitioner is confined within the county of King, state of Washington, and this court is without jurisdiction to grant the writ asked." Whereupon, and for the reason stated, the writ was denied, and the case comes here on appeal.

The appellant, after the refusal of the superior court of Chelan county to act upon her petition, filed a similar petition in the superior court for King county, with the same result, which cause likewise is brought here on appeal; and the appellant has made application for the consolidation of the two causes in this court.

It appears from the petition and the exhibits thereto attached that the petitioner was charged with being a juvenile delinquent within the meaning of Laws of 1913, ch. 160, p. 520 (Rem. Code, § 1987-1 *et seq.*). And the court in its original order of commitment provided:

"It is ordered, adjudged and decreed as follows: That said Louise Chartrand is a minor delinquent within the meaning of chapter 160 of the Laws of 1913 of the state of Washington; and it is further considered, ordered and adjudged, that the said Louise Chartrand be and she hereby is committed to The Home of the Good Shepherd, Seattle, Washington, until further order of the court or until said Louise Chartrand reaches the age of twenty-one years."

It is therefore apparent that the question here to be decided is, Did the superior court of Chelan county retain jurisdiction over the petitioner, and was the

application for the writ of habeas corpus made to the proper tribunal?

The juvenile court law, or juvenile act, Laws of 1913, ch. 160, p. 520 (Rem. Code, § 1987-1 *et seq.*), has been passed upon several times by this court, but not with reference to the question here raised. It will be necessary, therefore, to consider some features of the act briefly.

The last paragraph of § 1 of the act provides:

"For the purpose of this act only, all delinquent and dependent children within the state shall be considered wards of this state and their persons shall be subject to the custody, care, guardianship and control of the court as hereinafter provided." Rem. Code, § 1987-1.

In section 2 (p. 522):

"The superior courts in the several counties of this state shall have original jurisdiction in all cases coming within the terms of this act." Id., § 1987-2.

And in section 5 (p. 524):

"Any person may file with the clerk of the superior court a petition showing that there is within the county, or residing within the county, a dependent or delinquent child and praying that the superior court deal with such child as provided in this act." Id., § 1987-5.

From which it appears that the superior court, as to any such dependent or delinquent child, stands in the position of a guardian.

In the latter part of section 9 (p. 527):

"The jurisdiction of the court shall continue over every child brought before the court, or committed pursuant to this act, and the court shall have power to order a change in the care or custody of such child, if at any time it is made to appear to the court that it would be for the best interests of the child to make such change." Id., § 1987-9.

The court, therefore, having, by the terms of the act, such continuing jurisdiction, it would seem that such

jurisdiction continues wherever the child may be placed or committed by order of the court. And it appears to be the purpose of the act to allow the court great latitude in making such commitment in order to insure the greatest possible benefit to the child.

In section 8 (p. 525), it is provided:

"When any child under the age of eighteen years shall be found to be delinquent or dependent, within the meaning of this act, the court may, at any time, make an order committing the child to some suitable institution, or to the care of some reputable citizen of good moral character, or to the care of some training school or industrial school as provided by law, or to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for dependent, neglected, or delinquent children." Id., § 1987-8.

It requires no construction to determine from this language that it was the purpose to invest the superior court having the guardianship of any such child with the widest possible latitude and the greatest possible power, to the end that the child shall be suitably placed for the purpose of insuring its reformation and proper education and upbringing. And not only so, but may change the place of commitment whenever the circumstances require it, for the act provides in section 10 (p. 527):

"After acquiring jurisdiction over any child, the court shall have power to make an order with respect to the custody, care or control of such child, or any order, which in the judgment of the court would promote the child's health and welfare . . . and subject to being returned to the court for further proceedings whenever such action may appear to be necessary." Id., § 1987-10.

In fact, the whole act is replete with provisions showing that the jurisdiction of the court is continuing, and that the court at any time may make any necessary or-

der for the child's welfare. Nowhere in the act appears anything which requires the place of commitment to be within the county where the proceeding originated, and as the welfare of the child is the principal object sought, there seems to be no reason why the court should be so limited; and surely, if the court has power to commit the child to an institution without the county, it still retains its guardianship and jurisdiction over the child for all of the purposes of the act.

We have not overlooked Rem. Code, § 15, which says:

"Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties."

As in other cases where the court has undoubted jurisdiction of the person or the subject-matter its writs may run to other counties, so in this case; and moreover, as the court has continuing jurisdiction of the petitioner and has placed her beyond the boundaries of its county, under a law permitting the changing or modifying of the commitment at any time, it would be wholly illogical to hold that, by such extraterritorial commitment, it had lost jurisdiction for the purposes of the writ of habeas corpus.

It seems to us to require no argument, in view of the language used in the statute, to demonstrate that the superior court of Chelan county, having obtained jurisdiction over the petitioner under the act referred to, continued to have such jurisdiction over the petitioner, no matter in what county she might then by the order of such court be confined; and that the petition for the writ of habeas corpus was properly presented to said court as the court having jurisdiction of the petitioner.

For the reasons stated, the Chelan county cause will be reversed and remanded with directions to the trial court to receive and consider the petition and act upon the same upon the merits. And the King county case will be affirmed.

MAIN, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.