IN RE EMMA BAGLEY HOOK.

Special Term at Rutland, November, 1921.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 5, 1922.

*Dependent and Delinquent Children—Jurisdiction of Juvenile Court—Commitment to Industrial School—Effect of Marriage of Dependent Child—Writ of Habeas Corpus—"Incorrigible" Child.*

1.  Chapter 319 of the General Laws, relating to dependent, neglected, and delinquent children, was enacted in a valid exercise of the police power, is not penal, but protective, and is to be liberally construed, and when a child comes within the classes specified therein, he becomes and continues a ward of the juvenile court until his majority, unless sooner discharged.

2.  When a child is awarded to the board of charities and probation by the court he becomes a ward of that board, and is "discharged" within the meaning of G. L. 7323, and passes out of the immediate control of the court; but the court retains jurisdiction to make such further orders as future conditions may require.

3.  The Court will take judicial notice that the Vermont Industrial School is "some suitable state institution" for the commitment of dependent or neglected children, within the meaning of G. L. 7328.

4.  Where a dependent child was committed to the Vermont Industrial School on the application of the executive officer of the board of charities and probation, it will be taken that the board approved as required by No. 207, Acts of 1919, it being a criminal offence under No. 208, Acts of 1919, to receive such child into that school without such approval.

5.  The jurisdiction of the juvenile court over a child who was the ward of the board of charities and probation and subject to the control of the court was not affected by the child's marriage, and thereafter the court could lawfully take such action with reference to her discipline and control as the circumstances warranted.

6. While the writ of *habeas corpus* cannot be used for the correction of errors and irregularities, it is available if the court whose action is assailed was without jurisdiction or lacked the authority to make the particular order in question.

7. In the case of a criminal complaint, the writ of *habeas corpus* is available only to test whether a crime is charged, and not whether it is defectively charged.

8. The word "incorrigible," as used in G. L. 7323, defining a delinquent child to be one "who is incorrigible," means nothing more than that a child is deliberatly "unmanageable."

9. The commitment of a child to the Vermont Industrial School as a delinquent, based on a single act of insubordination, was without authority.

ORIGINAL PETITION to the Supreme Court of Orange County by Eugene D. Hook for a writ of *habeas corpus* to secure the discharge of Emma Bagley Hook, an infant, from the Vermont Industrial School. The opinion states the case.

*Hale K. Darling* and *Shields & Conant* for the petitioner.

*Millward C. Taft*, State's Attorney, for the State.

POWERS, J. Emma Alice Bagley, a child thirteen years of age, was committed by the Hartford juvenile court to the custody of the State Board of Charities and Probation, as a neglected and dependent child. She was placed by the board in a family in the town of Concord, where she remained a week or two, and until May 18, 1921. On that day, in the company of her father and the petitioner, she voluntarily and clandestinely left Concord and went to Chelsea. On the next day, in consummation of a previous engagement, she was married to the petitioner by a duly authorized minister of the gospel. This marriage was performed under a license regularly issued by the clerk of Chelsea, the town of the petitioner's residence—the father of Emma, as surviving parent, consenting thereto in writing. Later in the same day the probation officer caused the said Emma to be brought before said court on a petition alleging, in effect, that she was insubordinate, in that she ran away from the place where she was being cared for by said board, with a man whom she claimed to have married. Thereupon she was adjudged to be a

delinquent child, and was ordered to be committed to the Indus-trial School during the remainder of her minority, and was com-mitted accordingly.

[1]    This petition for a writ of *habeas corpus* is brought to secure the release of the child from that commitment, and is based solely upon the marital rights alleged to result from the marriage aforesaid.    The facts are not in dispute.    The right of a husband to prefer such a petition is not challenged; the validity of this marriage is not called in question; and the legality of the original order committing the child to the board of charities and probation is not denied.    Chapter 319 of the General Laws, being passed for the protection of a class of minors unable ade-quately to protect itself, was enacted in a valid exercise of the police power of the State.    Tiedeman, §§ 52, 196 *A; Ex parte Januszewski*, 196 Fed. 123; *State* v. *Issenhuth*, 34 S. D. 218, 148 N. W. 9; *In re Johnson*, 173 Wis. 571, 181 N. W. 741.    In none of its aspects is it criminal.    *House of Refuge* v. *Ryan*, 37 Ohio St. 197; *State* v. *Bryant*, 94 Neb. 754, 144 N. W. 804; *Farnham* v. *Pierce*, 141 Mass. 203, 6 N. E. 830, 55 A. R. 452; *Ex parte Januszewski, supra; In re Antonopulis*, 171 App. Div. 659, 157 N. Y. Supp. 589; *In re Turner*, 94 Kan. 115, 145 Pac. 871, Ann. Cas. 1916 E, 1022.    It is not penal, but protective.    It does not seek to punish the child or its parents for misdeeds or shortcom-ings.    It steps in merely to save the child from the evil tendencies of its situation, and to give it more efficient care and training, to the end that it may become a more worthy and useful member of society.    It is to be liberally construed.    G. L. 7337.    The welfare of the child lies at the very foundation of the statutory scheme, and, from the moment that the court determines that a child comes within the classes specified therein, he becomes a ward of that court, and so continues until he attains his majority, unless sooner "discharged" as provided in said chapter.    G. L. 7323.

[2]    When a child is awarded to the care of the board of charities and probation, he becomes a ward of that board (G. L. 7330), and is "discharged" within the meaning of G. L. 7323. That is to say, he passes out of the immediate control of the court. But the term "discharged," as used in the latter section, does not mean an absolute and permanent release from the court's control.    The award to the board is so far conditional that the court retains jurisdiction to make such further orders as future

conditions may require; and to this extent the guardianship of the board is subservient to the paramount authority of the court. Any other construction would tend to subvert the fundamental purpose of the statute. This authority of the court is not lost or exhausted, though the child be committed to a person or institution outside its territorial jurisdiction. *In re Chartrand*, 103 Wash. 36, 173 Pac. 728.

[3, 4] When it appears to the board, then, that it cannot adequately care for a child so awarded to it, it may apply to the court for a further order, and though the child be not delinquent, but only dependent or neglected, the court may thereupon commit him to "some suitable state institution." G. L. 7328. The Vermont Industrial School is such an institution. Of this we take judicial notice. Our interpretation of this section finds support in No. 207, Acts of 1919, which provides that no *dependent* child shall be committed to this school, without the approval of said board. Here, if important, it must be taken that the board did approve, since the order was made on the application of the executive officer of the board, and because under No. 208, Acts of 1919, it would be a criminal offence to receive this child into that school without the written approval of such board.

[5] When this marriage took place, then, this child was the ward of the board of charities and probation, and subject to the control of the Hartford juvenile court. Did her marriage, in and of itself, release her from this situation? The importance of this question is fully appreciated. It involves, on the one hand, the power and authority of the State, under Chapter 319, while acting as *parens patriae* in the discharge of most serious and essential civic obligations, and, on the other, of interests vitally affecting the most sacred and important of the domestic relations. The petitioner insists that this guardianship of the State was and could be of no higher character than one created by appointment of the probate court, or one arising from the parental relation, either of which would be discharged by the marriage—the one by force of G. L. 3718, and the other by force of *Sherburne* v. *Hartland*, 37 Vt. 528, and other cases.

With this contention we cannot agree. On the contrary, we think that when the State once assumes control of such a child as the statute describes its authority is and continues to be superior to any other, no matter what the latter may be—even

that under a retained jurisdiction of another court in prior divorce proceedings between his parents. *In re Hosford,* 107 Kan. 115, 190 Pac. 765, 11 A. L. R. 142, and note. The welfare and best interests of the child become the paramount and controlling consideration and, before the State can be compelled to relinquish its control, it must be made to appear in some legal way that these considerations require it.

The authorities on the question under consideration are not in full accord. In *State* v. *District Court,* 118 Minn. 170, 136 N. W. 746, it was held that an injunction issued by the juvenile court of Minneapolis forbidding the marriage of a fifteen year old girl who was under bail in delinquency proceedings before that court was of no force. The decision is put upon the ground that, at the time the injunction issued, no adjudication of delinquency had been made, and the girl was not within the control of the court. And attention is called to the fact that it is not decided what the situation would be if the court had committed her to the custody of some of its officers, instead of discharging her on bail.

In *Ex parte Lewis,* 3 Cal. App. 738, 86 Pac. 996, which was a petition for a writ of *habeas corpus* by a husband to secure the release of his wife, a minor, who had been committed to the Whittier State School, it was held that her marriage took the infant out of the class known under the statute as children and minors, and terminated the jurisdiction of the court over her, and she was discharged. This was in 1906.

In 1916, however, in *Ex parte Willis,* 30 Cal. App. 188, 157 Pac. 819, it was held that one who had, while a minor, been adjudged by a juvenile court to be a delinquent person and placed on probation until she became twenty-one years of age, and who had, during her probation, married without the consent of the court, was not entitled to discharge on arriving at the age of her majority.

*In re Lundy,* 82 Wash. 148, 143 Pac. 885, Ann. Cas. 1916 E, 1007, it was held that the juvenile court law applied to a girl seventeen years old who had previously been married, though the marriage had been annulled. And in the note on page 1012 of Ann. Cas. 1916 E, it is said that it is generally held that the jurisdiction of a juvenile court of a charge of delinquency against a minor is not affected by the fact that the minor is a married person.

In *Stoker* v. *Gowans,* 45 Utah 556, 147 Pac. 911, Ann. Cas. 1916 E, 1025, it was held that the operation of the law governing juvenile delinquents is not suspended by the infant's marriage. In that case a girl thirteen years of age was duly brought before a juvenile court, and, being adjudged a delinquent child, was commited to the state industrial school. Sentence, however, was suspended during good behavior, upon certain specified conditions. Afterwards the probation officer filed with the court a complaint charging that she had violated these conditions and resumed her evil ways. The court thereupon terminated the suspension of the sentence, and the child was committed. She was brought up on *habeas corpus,* and it was claimed in her behalf that, during the suspension of her sentence, she had married the petitioner. After pointing out that the record failed to show the alleged marriage, the court said: "But, assuming that she did marry, * * * yet there is nothing in the law governing juvenile delinquents which suspends its operation merely because a [the] delinquent enters into the marriage relation."

In *McPherson* v. *Day,* 162 Ia. 251, 144 N. W. 4, which was a *habeas corpus* proceeding to test the legality of the detention of a girl committed to an industrial school, it appeared that Martha Ellen Casson was duly committed to that institution as an incorrigible; that she escaped therefrom, and was apprehended and recommitted on March 21, 1912, on which date she informed the officers of her whereabouts; that she had attained her majority (eighteen years) on March 14, 1912, and on the same day had married the petitioner. It was held that her commitment having been until she attained the age of twenty-one years—which was in accordance with the statute—she was not illegally restrained.

From a careful consideration of the question in the light afforded by the cases referred to, we conclude that the jurisdiction of the Hartford juvenile court was not affected by this child's marriage, and that thereafter that court could lawfully take such action with reference to her discipline and control as the circumstances warranted.

[6-9]  It is urged in behalf of the petitioner, that the commitment to the Industrial School was illegal, because the juvenile record shows that the child did not come within the statutory definition of a "delinquent child," without which she could not be so committed under G. L. 7329.

That the writ of *habeas corpus* cannot be used for the correction of errors and irregularities is well established. *In re Fitton*, 68 Vt. 297, 35 Atl. 319; *In re Turner*, 92 Vt. 210, 102 Atl. 943; *In re Dexter*, 93 Vt. 304, 107 Atl. 134. Yet, if the court whose action is assailed was without jurisdiction, or lacked the authority to make the particular order in question, the writ may be availed of. *In re Harris*, 68 Vt. 243, 35 Atl. 55; *In re Turner, supra.* If the court has jurisdiction of the subject-matter and the person, and renders such a judgment or makes such an order as, in certain circumstances, it would be authorized to render or make in cases of that class, the proceedings, however irregular they may have been, will stand the test of the writ. *In re Fitton, supra; In re Turner, supra.* In the case of a criminal complaint, the question is, not whether the crime is defectively charged, but whether a crime is charged at all. *In re Turner, supra.* So, if one be committed against the law, as by one who had no jurisdiction of the cause, or for a matter for which no one could lawfully be committed, he will be discharged on this writ. Bacon's Abridg. Hab. Corp. B. 10. This rule, as applied to the case in hand, means that if this child was charged, in the second application to the juvenile court, with being a delinquent child, though in terms insufficient under the rules of pleading, the court had jurisdiction under G. L. 7329, and its order is beyond the reach of this proceeding. But if what was alleged against her did not and could not make her a delinquent child, then the court was without jurisdiction to adjudge her such and to make the order of commitment. So we come to the question, Did this girl's conduct in running away from Concord in defiance of authority warrant a finding that she was a delinquent child?

G. L. 7323 defines the terms "dependent child" and "neglected child," and provides that the term "delinquent child" shall include (among others) one who, being under sixteen years of age, is incorrigible. Assuming that it was intended by this language to define the term "delinquent child," the only ground on which this child could be adjudged a delinquent was that she was incorrigible within the meaning of the statute. "Incorrigible," says the petitioner, "means incapable of being corrected or reformed." And so it does; but this does not imply a literal and absolute impossibility of correction or reformation. It means only that one is incapable of being corrected or reformed

in his present situation and under his present control. *Hogue* v. *State,* 87 Tex. Cr. R. 170, 220 S. W. 96. Considering the purpose of the statute, we think the term means nothing more than that a child is deliberately ''unmanageable.''

When the board went to the juvenile court the second time, it did not invoke its retained jurisdiction over this child, but chose to proceed against her as a delinquent. And in its petition it did not charge delinquency in general terms. It was satisfied to confine its charge to a single ground of delinquency—that she was insubordinate, ran away from the place where she was being cared for by the board with a man whom she married. The fact that she married this man adds nothing to the charge. She had a legal right to do that. So, when analyzed, we find here only a single act of disobedience as a basis of the charge of delinquency. This was not enough. A child is not incorrigible who disobeys but once. Without attempting to lay down a definite rule for the future guidance of this child, or any other similarly situated, we hold that the juvenile court exceeded its authority when it made its order of commitment.

*It is adjudged that the said Emma Bagley Hook is illegally restrained in the Vermont Industrial School, and she is discharged from that restraint and remanded to the care and custody of the board of charities and probation, agreeably to the order of the Hartford juvenile court.*