TOWN OF BRIGHTON *v.* TOWN OF CHARLESTON.

February Term, 1945*

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed November 14, 1945.

* Reargued, October Term, 1945.

318

*Raymond L. Miles* for the defendant.

*Arthur L. Graves* for the plaintiff.

SHERBURNE, J. This action is brought under the provisions of P. L. 5455 to recover the share of the expense of the department of public welfare for the care and maintenance of the seven children of Earl G. Dugan, committed to it by the Essex municipal court acting as a juvenile court, which has been paid by the plaintiff. The declaration alleges that such children were found in plaintiff town and were residents of defendant town. In its answer the defendant pleaded general and special denials and two pleas in bar. The plaintiff joined issue upon the pleas in denial and demurred severally to the pleas in bar. The demurrers were

sustained. After a trial findings of fact were filed and judgment was entered for the plaintiff.

The determination of the questions presented involves the following sections in Chapter 226 of the Public Laws:

Sec. 5444 defines a dependent child or neglected child.

Sec. 5445, as amended by No. 135 of the Acts of 1937, gives jurisdiction of juvenile cases to the municipal courts in counties where there are such courts, and terms such courts juvenile courts while so acting. It provides that the state's attorney shall appear and present such cases, and that "The proceedings and orders of the court in all examinations and trials of such cases shall be entered in a book to be kept for that purpose and shall be known as the juvenile record."

Sec. 5446 provides for filing with the court a petition by a person who has knowledge of a dependent or neglected child, or by the commissioner of public welfare or his deputy.

Sec. 5447, as amended by No. 133 of the Acts of 1939, reads:

> "Upon the filing of such petition the court, before any further proceeding is had in the case, shall give fifteen days' notice thereof to the state probation officer who shall immediately inquire into and make a full examination of the parentage and surroundings of the child and all the facts and circumstances of the case and report the same to the court; and if after such investigation, it appears to the court that the public interest and the interest of the child will be best subserved thereby, a summons shall issue requiring the person having the custody or control of the child, or with whom the child may be, to appear with the child at a time and place which shall be stated in the summons; but such summons may be issued before such an investigation is completed; and if such person is other than the parent or guardian of such child, such parent or guardian shall be notified of the pendency of the case; . . ."

Sec. 5450 reads:

> "On the return of the summons or other process, or as soon thereafter as may be, the court shall pro-

ceed to hear and dispose of the case in a summary manner."

Sec. 5453 reads:

"The state probation officer, at the request of the court, shall investigate cases after issue of summons or warrant."

Sec. 5454, so far as material, reads:

"When a child is found to be dependent or neglected within the meaning of this chapter, the court may make an order committing the child to the care of the department of public welfare, . . . or commit the child to the care and custody of the state probation officer under such conditions as may be specified in the order of the court."

Sec. 5455 reads:

"When a dependent or neglected child has been committed by a juvenile court to such department, the department may incur such expenses for the proper care and maintenance of the child as it deems necessary, which shall be paid in equal shares by the state and town in which the child is found, but such expenses paid by such town may be recovered by such town from the town of which the child is a resident. Expenses shall not be so incurred by the department unless, prior to the issue of the order of commitment by the court, a notice for hearing has been given by the court to the department, its authorized agent or deputy, and to the overseer of the poor of the town in which the child is found. . . ."

Sec. 5467 reads:

"When the court finds a child neglected, dependent or delinquent, it may, in the same or subsequent proceedings, upon the summoning or voluntary appearance of the parents of the child, proceed to inquire into the ability of the parents to support the child or contribute thereto, and if the court finds the parents able to support the child or contribute thereto, the court may make such order or enter such judgment as shall be equitable in the

premises, and may enforce the same by execution or in any way in which a court of equity may enforce its orders and decrees. . . ."

The pleas in bar allege that the judgment of the municipal court was void as to the defendant because that court lacked jurisdiction of the defendant, no process nor notice was served upon the defendant, nor had the defendant any notice, nor did the defendant submit itself to its jurisdiction; and that Chapter 226 of the Public Laws, and section 5455, a part thereof, are void as to the defendant because they do not provide for notice to it and an opportunity to be heard, and therefore lack in due process of law contrary to the 14th Amendment to the Constitution of the United States.

A dependent or neglected child is usually poor and needy. The function of relieving the poor is properly governmental in its character. *Nadeau* v. *Marchessault,* 112 Vt 309, 311, 24 A2d 352; *Waitsfield* v. *Craftsbury,* 87 Vt 406, 410, 89 A 466, Ann Cas 1916 C 387. The State, as parens patriae, is authorized to legislate for the protection, care, custody and maintenance of children within its jurisdiction. 27 Am. Jur., Infants, § 102. A town has no vested right to be relieved from the charge of supporting any particular pauper. *Craftsbury* v. *Greensboro,* 66 Vt 585, 594, 29A 1024. It is a matter wholly within the discretion of the Legislature to determine what kindred, if any, shall support indigent persons incapable of supporting themselves, and under what circumstances any town shall be required to furnish such support, or whether the State shall support all or any part of such poor residing within its limits. It is competent for the Legislature, if it choose, to say that each town shall be liable to support every person born within its limits who shall at any time subsequently need relief. Instead of birth, it may make residence the test, and determine the length of residence which shall constitute such test. *Cambridge* v. *Boston,* 130 Mass 357.

No right, as against a state, to the equal protection of the laws, is secured to its municipal corporations by the 14th Amendment to the Constitution of the United States, which can limit in any way legislation to charge them with public obligations. *State ex rel Bulkeley* v. *Williams,* 68 Conn 131, 35 Atl. 24, 48 LRA 465, affirmed in 170 US 304, 42 L ed 1047, 18 S Ct 617. The

power of the state, unrestrained by the contract clause or the 14th Amendment, over the rights and property of cities held and used for governmental purposes, cannot be questioned. *Trenton* v. *New Jersey,* 262 U. S. 182, 67 L ed 937, 43 S. Ct 534, 29 ALR 1471. The power of the state and its agencies over municipal corporations within its territory is not restrained by the provisions of the 14th Amendment. *Risty* v. *Great Northern Ry. Co.,* 270 US 378, 46 S Ct 236, 70 L ed 642. See also *Jones* v. *Vt Asbestos Corp.,* 108 Vt 79, 92, 182 A 291; *Village of Hardwick* v. *Town of Wolcott,* 98 Vt 343, 351, 129 A 159, 39 ALR 1222.

*State* v. *Pierce County,* 132 Wash 155, 231 Pac. 801, 46 ALR 594, presents a situation substantially on all fours with the instant case. There the legislature passed an act relating to the admission of the insane to state hospitals, and provided for charges to be paid by persons and counties for the care and maintenance of such insane. The act outlines the procedure for the examination of the relatives of the insane persons for the purpose of determining the ability of the insane person, his estate, or relatives to pay for the expense of his care and maintenance while in the state hospital. If the court find that the insane person, his estate, or relatives have not the financial ability to pay the charges and costs, and that such insane person should be committed and is not violent or dangerous, then the costs and charges shall be paid by the county from which the commitment is made. It was claimed that the act violated the 14th Amendment of the Constitution of the United States, which guarantees equal protection and due process of law, because it did not provide for making the county a party to the proceeding to determine the character of the insanity, or the ability of the insane person, his estate, or relatives, to pay for his care and maintenance, and that compelling the county to pay the amount provided by the judgment therein is depriving it of its property without due process. The court said: "in dealing with the county's revenue, the legislature is dealing with a subject within its control. There is no question but what the state is bound by the proceedings, and the county, as a subordinate municipality, is also bound. 15 C. J. § 283, p. 581, is especially instructive upon this point: 'The revenues of a county are not the property of the county in the sense in which the revenue of a private person or corporation is regarded. A county being

a public corporation existing only for public purposes connected with the administration of a state government, its revenue is subject to the control of the legislature, and when the legislature directs the application of a revenue to a particular purpose, or its payment to any party, a duty is imposed and an obligation created on the county.' And in Smith's Modern Law of Municipal Corporations, Vol. 1, § 758 the same view is expressed in this language: 'The power of appropriation which a legislature can exercise over the revenues of the state for any purpose, which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city, or town, for any purpose connected with the present or past condition, except as such revenues may by the law creating them, be devoted to special purposes.' The supreme court of Utah in *Salt Lake County* v. *Salt Lake City*, 42 Utah, 548, 134 Pac. 560, answers the objection in this way: 'Can a resident of a city object every time a district court, or any other court of competent jurisdiction, enters a judgment in a public matter which in some way affects or may affect some fund of the city to which he contributes as a taxpayer upon the ground that the judgment either directly or indirectly invades the right of local self-government or taxation? The state as we have already pointed out, in enacting the law in question, simply calls upon its agencies, the counties, and cities to assist in discharging a public duty which in no way affects local self government. . . . In what is attempted here the state acts in its sovereign political capacity; and unless the law through which it acts is manifestly in violation of some express constitutional provision, the courts have no right to interfere.' "

14. Am. Jur, Constitutional Law, § 593, apparently upon the authority of the foregoing case, although it does not cite it to the particular point, says the state "may impose upon a county the cost of maintaining its harmless insane when the insane persons themselves or their relatives are not able to do so, even though the county is not made party to the proceedings in which the necessary facts are determined."

We hold that notice to the defendant town of the proceedings in the municipal court was unnecessary, and that the statutes are not in conflict with the 14th Amendment to the Federal Constitution for failure to provide for such notice and an opportunity for

the defendant to be heard. The demurrers were properly sustained.

At the trial on the issues of fact a certified copy of the petition filed in the municipal court on September 26, 1942, was received without objection, and a certified copy of the proceedings upon the petition was offered and received subject to defendant's exception. This contains a copy of the citation, with a minute of the acceptance of service and the judgment order written on the back thereof, and a copy of the mittimus in the case of each child. The citation is directed to the department of public welfare and to the overseer of the poor of the town of Charleston, is dated the day of the hearing, and is signed by Harry B. Amey as deputy state's attorney. The acceptance of service is in these words:

"Brighton, Vermont, Sept. 29, 1942.

Service of the within notice is hereby accepted, receipt of copy acknowledged, and all other and further service is expressly waived.

Department of Public Welfare
By Alice Gray Hickox
Deputy.

By town of Charleston, Vermont,
John Taplin
Overseer of the Poor.

By the Town of Brighton, Vermont,
P. A. Bartlett
Overseer of the Poor."

The judgment order reads as follows:

"MUNICIPAL COURT
Juvenile

In re Dorothy, Doris, Durwood, Marjorie, May Norma, Joyce and Nancy Durgin.
Notice to Department of Public Welfare and Overseer of Poor.

Brighton, Vermont,
September 29, 1942.

Hearing held on the above mentioned date; State represented by State's Atty., Amey; Dept. of Public Welfare by Alice Gray Hickox; Mr. Durgin by Atty. McShane, Mrs. Durgin by Atty. Drew.

Evidence showed that the above mentioned children are neglected, and the Court so found, and they were thereupon committed to the care and custody of the Dept. of Public Welfare at the joint expense of the town of Brighton and the State of Vermont; and it was further ordered that the father, Earl Gardner Durgin, pay $20.00 per week toward the support of the children.

E. J. Nelson, Judge."

Each mittimus, among other things, recites as follows:

"The Department of Public Welfare, its authorized agent or deputy and the Overseer of the Poor of the towns of Charleston and Brighton having had due notice and an opportunity for hearing."

Defendant's objection to the reception of the foregoing was that because the record failed to show compliance with the statutes the municipal court was without jurisdiction to make the order of commitment. Among other things it was pointed out that it didn't appear that, upon the filing of the petition and before any further proceeding, the court gave notice thereof to the state probation officer, or that that officer made any investigation regarding the parentage and surroundings of the children and the facts and circumstances of the case and reported the same to the court, or that the public interest and the interest of the children would be best subserved by a commitment.

In interpreting the meaning of P. L. 5447, as amended, and heretofore quoted, it is helpful to examine this section as it read before it was amended. It then provided that, after the filing of the petition and before any further proceeding, the court "may give notice to the state probation officer," and then read the

same as now set forth in the amended section down to the semi-colon before the words "but such a summons". It then read "but such a summons may be issued without such an investigation." By No. 136 of the Acts of 1937, this section was amended to read that the court "shall", instead of "may", "give notice thereof to the state probation officer", and to further read "but such a summons may be issued before such an investigation is completed" instead of "without such an investigation." Then by No. 133 of the Acts of 1939 this section was further amended by inserting the words "fifteen days' " after the word "give" and before the word "notice". It is clear from the section as now amended, interpreted in connection with the foregoing, that the Legislature intended that there should be no hasty action in such cases, and that the juvenile courts were to be assisted by the state probation officer or by his authorized representative in deciding whether or not any action should be taken upon a petition. Under this section as it now reads the juvenile court cannot proceed to issue a summons until fifteen days after the required notice has been received by the state probation officer, or by a person legally authorized to receive it for him unless that officer or his representative directed to investigate the particular case and report to the juvenile court waives such notice. The provision that a summons may be issued before the investigation has been completed affords an opportunity to proceed after such fifteen days in cases where some investigation has been made, but a full investigation has not been completed. Even then the results of the partial investigation must have been reported to the court and it must appear to the court that the public interest and the interest of the child will be best subserved by the issuance of a summons, before the court has authority to issue the summons. These provisions are matters of public interest and cannot be waived by the child's parents. As the fifteen days' provision is for the purpose of affording time to make the investigation there is no reason why the state probation officer or his authorized representative should not be able to waive it in whole or in part in cases where an investigation has been made before the petition is filed, or in cases where that length of time is not needed to complete the investigation. In case this provision is so waived the record of the court should show it.

Although the commissioner of public welfare is ex officio state probation officer, P. L. 471, as amended by Sec. 1 of No. 59

of the Acts of 1941, the clear intent expressed in P. L. 5447, as amended, is that notice shall be given to him as state probation officer, or to a person legally authorized to receive it for him, and not to the department of public welfare. The mere fact that some one was present at this hearing representing the department of public welfare does not show a waiver of the fifteen days' provision.

Because the board of charities and probation, which under Chap. 319 of the General Laws occupied a position relative to dependent, neglected and delinquent children similar to that now occupied by the department of public welfare, and whose secretary under G. L. 7292 was state probation officer, was abolished, along with the state probation officer, by Sec. 4 of No. 7 of the Acts of 1923, and by Sec. 2 thereof the department of public welfare was created, to be administered by a commissioner of public welfare, and by Sec. 30 it was provided that such department should exercise the rights, powers and duties theretofore vested in the board of charities and probation and in the state probation officer, and that the commissioner of public welfare should, by virtue of his office, be state probation officer, as now provided in P. L. 471 as amended by Sec. 1 of No. 59 of the Acts of 1941, it is contended that the term "state probation officer" as now used is synonymous with "the department of public welfare", and that notice to the department of public welfare is notice to the state probation officer under P. L. 5447, as amended.

All the departments created by No. 7 of the Acts of 1923, now covered into Chap. 25 of the Public Laws, are branches of State administration. The commissioner or board at the head of each department is empowered to prescribe and to enforce rules and regulations, subject to the approval of the Governor, for the government and administration of such department and the conduct of its employees. P. L. 458. Each department is empowered to employ such assistance, clerical or otherwise, as the Governor deems necessary for its proper and efficient administration. P. L. 460. Although each department is to be administered by the commissioner or board at its head, the term "department" comprises an organized staff of officials, assistants and clerks, and includes more than the commissioner or board at its head.

It is true that No. 7 of the Acts of 1923 abolished the old state probation officer as a separate officer, but it provided at the

same time that the commissioner of public welfare should, by virtue of his office, be state probation officer. While Sec. 30 of that Act states that the department of public welfare shall exercise the rights, powers and duties theretofore vested in the state probation officer, it likewise provides that the commissioner of public welfare, the head of the department, shall be state probation officer. The clear intent is that the duties of the state probation officer shall be exercised by the commissioner personally as state probation officer, or through his authorized representative, rather than by the department as such, which has many and varied duties to perform. This intent is carried forward into P. L. 471, as amended, where nothing is said about the department's exercising such duties, and all that is said in that regard is that the commissioner "shall, by virtue of his office, be the state probation officer". Referring to the use of the terms "state probation officer" and "department of public welfare" in Chap. 226 of the Public Laws, we note that in sec. 5447, as amended, notice is to be given to the state probation officer; that in sec. 5451 pending disposition of a case the child may be placed in charge of such probation officer; that in sec. 5453 the state probation officer, at the request of the court, shall investigate cases after issue of summons or warrant; that in sec. 5454 a child may be committed to the care of the department of public welfare or to the care and custody of the state probation officer; and that in sec. 5455 expenses shall not be incurred by the department, unless prior to the order of commitment a notice for hearing has been given to the department, its authorized agent or deputy. The only occasion for notice to the department is in cases where it is to be put to expense for the support of the child, but under sec. 5447, as amended, 15 days' notice must be given to the State probation officer, or to a person legally authorized to receive it for him, before any proceeding is had upon a juvenile petition. It is clear that the Legislature did not intend to use the two terms as synonymous, but did intend the distinction we have pointed out.

The foregoing conclusion is further supported by reference to the statutory provisions prior to the abolishing of the board of charities and probation and the state probation officer in 1923. G. L. 7326, from which is derived P. L. 5447 and 5451, provides for notice to the state probation officer, and that pending the disposition of a case the child may be placed in charge of the state

probation officer. G. L. 7327, from which is derived P. L. 5453, provides that the state probation officer shall at the request of the court investigate cases after issue of summons or warrant. G. L. 7328, from which is derived P. L. 5454, provides that a child may be committed to the care of the board of charities and probation, or to the care and custody of the state probation officer. No. 206 of the Acts of 1919, from which is derived P. L. 5455, provides that expenses shall not be incurred by the board of charities and probation for the support of a child committed to it, unless prior to the issue of the order of commitment a notice and opportunity for hearing has been given to the board, its authorized agent or deputy. It is clear that the Legislature in enacting the Public Laws intended to carry forward from the General Laws these distinctions. Although enacted after commitment of the children referred to in the instant case, it is interesting to note that in sec. 3 of No. 89 of the Acts of 1943, P. L. 5451 is amended so as to provide for placing a child "in charge of such probation officer or in the care and custody of the department of public welfare", pending final disposition of a case.

It is clear that the State Probation officer cannot be expected personally to investigate and report on all cases of dependent and neglected children. To say that it was the intention of the Legislature that he should do so would give an absurd construction to the statute, and tend to defeat the reason and spirit of the law, although it may be in accordance with the literal sense of the words used. *Brammall* v. *LaRose,* 105 Vt 345, 349-350, 165 A 916.

As in the case of other public officials, the State probation officer may, in the absence of statutory prohibition, express or implied, delegate the performance of ministerial duties to others. The investigation and report concerning dependent and neglected children is ministerial in character, for it involves no discretion, but only the ascertainment of the circumstances and the conveyance of the information received to the court, so that the court may decide whether a summons should be issued. The report has no force as evidence in the trial of the case. It is merely for the preliminary enlightenment of the Court. And so, also, the acceptance of service and waiver of notice are ministerial acts which may be delegated.

By P. L. 8871 the Commissioner of Public Welfare is em-

powered to appoint, with the approval of the Governor, deputy probation officers, who shall be under his supervision and control as state probation officer. The question is, must the investigation and report be made by one of these deputies, or may another person be employed to do so? P. L. 8871 is a part of Chapter 355 of the Public Laws, and this chapter has to do with the powers and duties of the state probation officer concerning the supervision of persons placed on probation after conviction of crime, and of paroled prisoners, and concerning the investigation of such persons with regard to the advisability of their being placed on probation or paroled. The duties of the deputies are not prescribed, but it is to be supposed that they are intended to exercise the authority of the state probation officer with regard to the matters given him in charge by the chapter above mentioned. This chapter covers a very different subject matter than Chapter 226. The two are not in *pari materia*. The supervision of. criminals is not at all of the same nature as the investigation of children claimed to be delinquent, dependent or neglected. Such proceedings are civil and not criminal in character. *In re Gomez,* 113 Vt 224, 32 A2d 138. While the majority of the court agree that such an investigation might legally be made by a deputy probation officer, they see no valid reason for saying that it must be done by him, or that the state probation officer could not legally delegate the matter to a competent representative of the Department of Public Welfare, which department is charged with the care and custody of such children, and they hold that the state probation officer can so delegate the matter to such representative to investigate and report to the juvenile court.

 If there is any repugnancy between the provisions of P. L. 5447, as amended, and P. L. 5453, the former section as a later expression of the legislative will must prevail. *Giguere* v. *Rosselot,* 110 Vt 173, 183, 3 A2d 538; *Hogaboon* v. *Highgate,* 55 Vt 412, 414.

 Our municipal courts, as established by Chap. 57 of the Public Laws, are courts of record and the proceedings therein are according to the course of the common law. They are to be classed as courts of general jurisdiction, and every presumption that is not inconsistent with the record is to be indulged in favor of their jurisdiction. *Enosburg Grain Co.* v. *Wilder & Clark,* 112 Vt 11, 14, 20 A2d 473. A court of general jurisdiction may have

special and summary powers which are wholly derived from statute, are not exercised according to the common law, and do not belong to it as a court of general jurisdiction. In such cases its decisions must be regarded and treated like those of courts of limited and special jurisdiction. 14 Am. Jur., Courts, § 6; *Galpin* v. *Page,* 18 Wall. 350, 371, 21 L ed 959, 964; *Morse* v. *Presby,* 25 NH 299, 302; *Illinois Central R. R. Co.* v. *Hasenwinkle,* 232 Ill 224, 83 NE 815, 15 LRA (NS) 129; *Furgeson* v. *Jones,* 17 Or 204, 20 P 842, 3 LRA 620, 11 Am St Rep 808; *Warren* v. *Union Bank of Rochester,* 157 NY 259, 51 NE 1036, 45 LRA 256, 68 Am St Rep 777.

When acting as a juvenile court a municipal court is exercising special and limited statutory powers not according to the course of the common law. The hearing is summary. P. L. 5450. There is no right to a jury trial. *Re Gomez,* 113 Vt 224, 32 A2d 138. And it must be classed with the probate courts, the public service commission, and other bodies exercising special and limited statutory powers not according to the course of the common law, as to which nothing will be presumed in favor of their jurisdiction, but the facts necessary to confer it must affirmatively appear from the record, and the exercise of jurisdiction does not imply a previous ascertainment of those facts. *Bessette* v. *Goddard,* 87 Vt 77, 82, 88 A 1; *Fisher* v. *City of St. Albans,* 87 Vt 524, 526, 90 A 582; *Kent* v. *Village of Enosburg Falls,* 71 Vt 255, 44 A 343; *In re Allen,* 82 Vt 365, 380, 73 A 1078, 26 LRANS 232; *Mason's Guardian* v. *Mason,* 86 Vt 279, 84 A 969; *Barber* v. *Chase,* 101 Vt 343, 351, 143 A 302; *Probate Court* v. *Indemnity Ins. Co.,* 106 Vt 207, 210, 171 A 336. And if the facts necessary to confer jurisdiction do not appear from the record its judgments and orders are void, and may be treated as a nullity. *In re Allen, supra; Probate Court* v. *Indemnity Ins. Co., supra.*

The authorities cited as to the status of the juvenile courts as exercising special and limited statutory powers are not questioned, but because of the provisions of P. L. 5470 it is argued that every presumption that is not inconsistent with the record should be indulged in favor of their jurisdiction, as in the case of courts of general jurisdiction when the proceedings therein are according to the course of the common law. This section is at the end of chapter 226 of the Public Laws, several sections of which are referred to in the opinion, and provides: "The provisions of

this chapter shall be liberally construed to the ends that its purpose may be carried out; that the care, custody and discipline of a child shall approximate, as nearly as may be, that which should be given by his parents and that the restraint of a delinquent child shall tend rather toward his reformation than to his punishment as a criminal." This liberal construction is to be in favor of the child's welfare, that his care, custody and discipline shall approximate that which should be given by his parents, and that his restraint when delinquent shall tend rather toward his reformation than to his punishment. It does not dispense with a record showing all the facts necessary to confer jurisdiction.

As the record of the municipal court does not show that the statute was complied with in the foregoing respects, its judgment was void, and it was error to receive the copy of the proceedings in evidence.

The defendant under its exception also objected because the record does not show that any summons was ever issued requiring the person having the custody or control of the children, or with whom the children were, to appear with the children. If such person voluntarily appeared with the children and submitted to the jurisdiction of the court a summons was waived. *Howe* v. *Lisbon Savings Bank,* 111 Vt 201, 211, 14 A2d 3; *Huntley* v. *Henry,* 37 Vt 165.

The defendant further objected on the grounds that the citation to the department of public welfare and the overseer of the poor was not issued according to the statute, because signed by the deputy state's attorney, and that it is not bound by the recitation in the mittimus that the department of public welfare and the overseers of the poor of the towns of Brighton and Charleston had due notice and opportunity for hearing. The citation under P. L. 5455 could only be lawfully signed by the judge or clerk of such court. P. L. 1409. Because it was not so signed it was fatally defective. *Anderson* v. *Souliere,* 103 Vt 10, 151 A 509. Knowledge is not the same as legal notice, for to constitute such notice the knowledge must be communicated in the prescribed way. *Wade* v. *Wade's Admr.,* 81 Vt 275, 280, 69 A 826. Unless those required by P. L. 5455 to be notified voluntarily appeared and submitted to the jurisdiction of the court the judgment was void as to them. *Howe* v. *Lisbon Savings Bank, supra.* As to whether the department of public welfare did so appear and submit to the jurisdic-

tion of the court we need not determine, but the record does not show that either town overseer of the poor did so. Their mere presence at the hearing did not constitute an appearance. *Nichols Elec. Co.* v. *Fienberg,* 101 Vt 99, 103-104, 141 A 679.

██ Although the judgment order recites "Notice to Department of Public Welfare and Overseer of the Poor", and the mittimus recites "The Department of Public Welfare, its authorized agent or deputy and the overseer of the poor of the towns of Charleston and Brighton having had due notice and an opportunity for hearing", these statements are impeached by that part of the record showing the void citation. Where the remainder of the record positively shows a void service of process, the recital in the judgment does not give rise in a collateral proceeding to a presumption of another service. To the contrary, it is presumed in such proceeding that the service found in the record is the same and only service referred to in the general recital in the judgment and that the court acted upon the service appearing in the record. 31 Am. Jur., Judgments, § 607. See Annotations in 68 ALR pages 395 to 400. See also *Hubbard* v. *Dubois,* 37 Vt 94, 86 Am Dec 690. In that case the record showed that the writ issued against four defendants, but service was made on two only. Immediately following the recital of the writ and return of service the record proceeds as follows: "And at the same term come the said defendants by their attorney. . .", and proceeds to state the proceedings to a final judgment against the defendants. It was held that the record shows an appearance for those defendants only upon whom service had been made. The foregoing authorities relate to defective service of process. The same rule applies to defective process. Because service of the defective process was accepted makes no difference. The fair meaning of the acceptance of service minuted upon the citation is that the signers thereof admit the service with the same effect it would have if made upon each of them by an officer, and nothing more. *Butterworth* v. *Hill,* 114 US 128, 29 L ed 119, 5 S Ct 796.

██ The judgment must be reversed, but as we are satisfied that the plaintiff may have a meritorious case if it can produce an amended record of the proceedings in the juvenile court showing the necessary jurisdictional facts, and in order that an injustice may not be done the cause will be remanded for further proceed-

ings, rather than entering final judgment here. *Vilas* v. *Seith,* 108 Vt 18, 23, 183 A 854, and cases cited.

*Judgment reversed, and cause remanded.*

Sherburne, J. dissents. He thinks:

1. That, unless waived, the fifteen days' notice must be received by the state probation officer personally or for him by his deputy, the deputy commissioner of public welfare, appointed under the provisions of P. L. 445, as amended by sec. 4 of No. 9 of the Acts of 1939.

2. That only such deputy or a deputy probation officer, appointed under the provisions of P. L. 8871, can be designated to investigate and report to the juvenile court.

3. That only the state probation officer, his deputy or the designated deputy probation officer can waive the fifteen days' provision.

4. That the provisions for the appointment of a deputy and deputy probation officers are an implied prohibition of the designation of any other person to have authority to so act.