# In re Ronald M. Rich

[216 A.2d 266]

Special Term at Woodstock December 27, 1965

Present: **Holden, C. J., Shangraw, Barney and Keyser, JJ. and**

**O'Brien, Supr. J.**

Opinion Filed January 13, 1966

*Peter Forbes Langrock* for petitioner.

*John Connarn*, Attorney General, for the State.

**Barney, J.** Since March 5, 1965, this petitioner, now eighteen years old, has been confined in the House of Correction by executive order, without sentence or conviction for a crime. He seeks release

through habeas corpus, not only from that and associated temporary confinement at Waterbury State Hospital, but from all restraint stemming from juvenile proceedings ordering him to Weeks School in June, 1962, when he was fourteen. He has both a guardian ad litem and an attorney representing his interests before this Court.

By stipulation, the issues raised here are two:

1. Was the original commitment by the Franklin Municipal Court, acting as a Juvenile Court, dated 11 June, 1962, valid?

2. Was the transfer from the Weeks School to the House of Correction, under Executive Order of 5 March 1965, valid?

In connection with the first issue it is conceded and agreed that the petitioner had no guardian appointed in the juvenile proceedings, had no counsel and was never informed of any right to counsel.

The matter began with a petition to the juvenile court for Franklin county by the state's attorney alleging that the petitioner had contributed to the delinquency of a fourteen year old school friend by encouraging and causing the friend to commit petty larceny by stealing a sum of money from that friend's own parents. A hearing was held June 11, 1962, attended by the boy, his mother who was his custodian, (the parents are divorced), the state's attorney, and various court personnel. At that time the judge had in hand the report of the investigation by a representative of the Department of Social Welfare, as authorized by 33 V.S.A. §613. The summons for the hearing gave notice to all upon whom it was served that such a report had been filed with the court on May 29, 1962. This report recited the boy's personal history with respect to his family situation and environment, school relationships, and previous behavior. Commitment to Weeks School for the remainder of his minority followed.

His later transfer to the House of Correction at Windsor on March 5, 1965, derived from his behavior at Weeks School, and was done under the authority of 28 V.S.A. §415, which provides:

A person confined in such school in execution of a sentence who does not obey the regulations of such school and is not of good deportment, may be transferred from such school to the house of correction, upon the written order of the governor, for the remainder of his original term, or until such time as the governor may by written order return him to such school, as provided in section 416 of this title.

The contents of the executive order disclose that he ran away from Weeks School twice, stealing a car on each occasion, once reaching Canada and once going to New York State. As a consequence, the order declares that he is no longer a fit subject for further care in an open juvenile training school, and that his presence is detrimental to the welfare of Weeks School and its charges. Since he was committed to Weeks School for the duration of his minority, his commitment to the House of Correction was for the same term, unless he was sooner lawfully discharged.

■ The theory of juvenile proceedings for the State of Vermont has already been clearly enunciated. *In re Hook* 95 Vt. 497, 499, 115 Atl. 730; *In re Gomez* 113 Vt. 224, 225, 32 A.2d 138; *Brighton* v. *Charleston* 114 Vt. 316, 332, 44 A.2d 628. It is a protective proceeding entirely concerned with the welfare of the child, and is not punitive. The procedures supersede the provisions of the criminal law and laws affecting minors in conflict with the authorizations of the juvenile court statutes. 33 V.S.A. §627. The inquiry relates to proper custody for the child, not his guilt or innocence as a criminal offender. *Brighton* v. *Charleston,* supra 114 Vt. 316, 332, 44 A.2d 628.

This approach to juvenile problems has found widespread acceptance since the establishment of the first juvenile court in Chicago in 1899. McLaughlin and McGee "Juvenile Court Procedure" 17 Ala. L. R. 226 (1965). Early enthusiasm for summary proceedings, such as authorized by 33 V.S.A. §609, led some jurisdictions to authorize hearings and action so summary as to verge on the arbitrary. See Paulsen "The Juvenile Court and The Law" 11 Wayne L. R. 597, 607-8, 611-16. Voices began to be raised in protest, reminding that considerations of due process may run deeper than specific constitutional requirements related to criminal law, and that authority to dispense with the latter does not justify violating the fundamental requirements of a fair hearing. See 5 Wigmore "Evidence" §1400 (3rd Ed. 1940). *In re Cromwell* 232 Md. 409, 194 A.2d 88, 91. Some courts have turned to constitutional standards for criminal trials as applicable to juvenile proceedings, others have applied the standards of civil proceedings, and still others have been more liberal, allowing hearsay evidence freely, for example. See generally Annotation 43 A. L. R. 2d 1128.

The issues are not clearly settled. The contentions on both sides have received dramatic presentation. See *Holmes Appeal,* 379 Pa. 599, 109 A.2d 523. Certain conclusions relevant to the matter before

us do seem valid, however. A juvenile proceeding may properly dispense with formal constitutional requirements relating to criminal proceedings. *Petition of Morin*, 95 N. H. 518, 521, 68 A.2d 668. *In re Gomez* supra, 113 Vt. 225, did so with respect to the right to a jury trial. The justification is based upon the conception of the proceedings as non-criminal and as being an exercise of the parens patriae authority of the state, making it essentially a custody proceeding. *People* v. *Dotson*, 46 Cal. 2d 891, 895; 299 P. 2d 875, 877. That this is its nature is recognized by the jurisdictional nature of the requirement of 33 V.S.A. §606 that both the child or children involved and the person having their custody and control be brought before the juvenile court concerned. *In re McMahon Children*, 115 Vt. 415, 420 63 A.2d 198. In this case, this was accomplished by the attendance at the hearing of the petitioner's mother, as his natural guardian and the person having custody and control of the child.

Failure to carry out the constitutional injunction for criminal cases requiring that parties be advised of their right to counsel is likewise not fatal to juvenile court jurisdiction. This is by no means to say that parties may not have counsel. Chief Justice Kenison has succinctly disposed of that issue in his opinion in *In re Poulin*, 100 N. H. 458, 129 A.2d 672. It was held in that case that counsel for a party could not be prohibited from participating.

■ We are not confronted here with a case where the petitioner was denied counsel, or where his counsel was not allowed to participate. The defect advanced is the failure to inform him that he had a right to counsel. Dealing with the matter, as we must on habeas corpus, as a claim of such substance as to invalidate the whole proceedings, we cannot find that it reaches such stature. *In re Mears*, 124 Vt. 131, 136, 198 A.2d 27; *In re Garcia*, 201 Cal. App. 2d 662, 665. As is pointed out in *Swann* v. *District of Columbia*, 152 A.2d 200, there is no constitutional shortcoming. So long as the proceeding is, as it is, in the nature of a custody hearing concerned with the welfare of the child, and conforms to the substantive requirements of essential due process, we will not find a jurisdictional defect in a failure to inform the potential ward of the State that he, too, may employ counsel. See Paulsen, "Fairness to the Juvenile Offender" 41 Minn. L. R. 547, 568-73, and Anno. 60 A. L. R. 2d 691, 698.

■ The petitioner also contends that he was entitled to a guardian ad litem at the hearing. We think not. In essence, guardianship was the very issue involved in the proceeding. The question was whether

his custody should remain with his mother as natural guardian or be transferred to the State of Vermont as parens patriae. *Brighton* v. *Charleston,* supra, 114 Vt. 316, 332.

■ It was discretionary with the juvenile court to appoint a guardian for the petitioner for the proceedings in addition to, or in place of, the petitioner's mother, if he saw fit, under the authority of 33 V.S.A. §606. The mandatory provisions of 33 V.S.A. §678 are directed to criminal proceedings. The whole design of the juvenile law is to avoid the charging of a juvenile under sixteen with a crime, making the application of 33 V.S.A. §678 inappropriate. In addition, there is nothing in that section declaring it to be an exception to the general provisions of 33 V.S.A. §627, previously referred to, which declare that the juvenile court provisions shall supersede provisions of the juvenile law and laws affecting minors conflicting with it. Nothing has been made to appear here to show any abuse of discretion on the part of the juvenile court in this connection. *State* v. *Brisson,* 124 Vt. 211, 215, 201 A.2d 881.

■ We are, as we have said, concerned with defects of substance. In view of the large responsibility given to judges of juvenile courts to act to further the welfare of juveniles appearing before them, we must point out that our failure to find defects of substance in the absence of counsel or guardian ad litem in this case does not mean that there can be no juvenile case where failure to provide one or the other would amount to such a defect. These proceedings must not be so summary that they fail to measure up to the minimum essentials of substantive due process. *In re Anonymous* 238 N. Y. S. 2d 792, 798; Paulsen, "The Juvenile Court and The Law," supra, 11 Wayne L. R. 597, 609 (1965). The breadth of the court's authority to deal with juveniles is matched by a corresponding breadth of responsibility to protect the minor's interests. *In re Mears,* supra, 124 Vt. 131, 137; *People v. Dotson,* supra, 46 Cal. 2d 891, 895, 299 P. 2d 875, 877.

The validity of the whole juvenile system is dependent upon its adherence to its protective, rather than its penal aspects. *In re Gomez,* supra, 113 Vt. 224, 225. The dispensing with formal constitutional safeguards can be justified only so long as the proceedings are not, in any sense, criminal. The statutory purposes must not be belied by its procedures.

The House of Correction is defined by 28 V.S.A. §103 as follows:

There is hereby established at the state prison at Windsor a department thereof to be known as the house of correction for

men, for the punishment, employment and reformation of men who are convicted of misdemeanors.

Confinement in a penal institution will convert the proceedings from juvenile to criminal and require the observance of constitutional criminal safeguards. *White v. Reid,* 125 F. Supp. 647, 649-51, also 126 F. Supp. 867, 871. Judge Armon W. Ketcham, Associate Judge of the Washington, D. C. Juvenile Court, has said that the non-criminal aspect "is the legal backbone of the constitutionality of all American juvenile court legislation. If, after such a juvenile proceeding, the juvenile can, by the discretionary act of an executive officer, be transferred to a place of penal servitude, the entire claim of 'parens patriae' becomes a hypocritical mockery." The Judge, quoted in Coleman "The Constitutional Rights of a Juvenile Delinquent" 50 Women Lawyers Journal 84 (1964), goes on to point out that such action confines a person in a penal institution without having been found guilty of a crime.

It is therefore essential to the constitutional validity of our juvenile court procedures that the power to connect it to a punitive proceeding in the criminal sense be removed. The rehabilitative caretaking offered in exchange for constitutional protections must be substantive and real, not mere verbiage. Otherwise the exchange is, in the words of Professor Paulsen, counterfeit, Paulsen "Fairness to the Juvenile Offender" supra, 41 Minn. L. R. 547, 576 (1957).

■ To this end we hold that any transfer from Weeks School to a penal institution must be founded upon a criminal prosecution and conviction attended by the constitutional guarantees appropriate to such a proceeding. Transfers under the authority of 28 V.S.A. §415 can consitutionally be made only under such circumstances. This did not occur in this case and must be corrected by a return of the petitioner to Weeks School.

We recognize that, although recalcitrant Weeks School inmates usually are not transferred to the House of Correction without engaging in behavior chargeable as criminal, nevertheless this ruling will impose administrative and disciplinary problems on the institutions involved. It is fundamental, however, that solutions to these problems must meet constitutional standards.

*Petition dismissed. The petitioner is discharged from his present confinement and remanded to the custody of the Superintendent of the Weeks School, who is commanded to receive him on the authority*

*of the mittimus issued by the juvenile court for the county of Franklin dated June 11, 1966.*

**Holden, C. J.** Concurring. I agree that proceedings in the juvenile courts are designed to be protective rather than penal. But the humanitarian concept of the Juvenile Court Act does not relieve a juvenile commitment from the fundamental demands of due process.

In the present proceedings the right of the petitioner to assistance of competent counsel, acting with an informed guardian ad litem, has been carefully observed. Yet there has been no indication that the juvenile proceedings, in which the petitioner was found delinquent, resulted in any undue advantage. Indeed there is no challenge to the finding of delinquency. In this context, I concur that the mere absence of an explanation to the juvenile of the right to assistance of counsel does not result in the denial of due process of law.

It is one of the anomalies of the juvenile court system that in dealling with children under sixteen years of age, the statute imposes on the court itself the duties of a guardian. The court is called upon to protect not only the welfare of the child before it, but it must safeguard his legal rights as well. In removing a child of less than sixteen years from the posture of one accused, and the stigma of guilt, the statute imposes on the juvenile court the task of preserving the delicate balance between two demands, — the welfare of the child and his right to equal protection and due process of the law.

I agree that the laudable objectives of the act and the fundamental requirements of procedural due process are not incompatible. *In re Poulin,* 100 N. H. 458, 129 A. 2d 672, 673. But this combination of duties and functions assigned to the judge of the juvenile court calls upon him to devote scrupulous attention to both considerations.

Accordingly, it is my view that the record of juvenile proceedings, called for in 33 V.S.A. §603, should be something more than the minutes of what took place. It must establish the jurisdictional facts. *Brighton* v. *Charleston,* 114 Vt. 316, 331, 44 A. 2d 628. It should also appear that the adjudication is sound in law. *In re Hook,* 95 Vt. 497, 504, 115 Atl. 730. As to this, the report of the Department of Social Welfare has no force as evidence at the trial of the case. *Brighton* v. *Charleston,* supra 114 Vt. at 329. The record should demonstrate that the hearing was fairly conducted. Anything less than this is arbitrary power. *People* v. *Fitzgerald,* 244 N. Y. 307, 155 N. E. 584, 587.

Should it appear the interest of the child, his natural parents, and that of the state are in conflict, a special guardian for the child should be designated. Where complications of substantive or procedural law are involved, the right of all parties to be heard with the assistance of counsel should be observed. The observance of this right in the transcript of the proceedings should be a part of the judicial record referred to in Section 603.

I resort to a separate concurring opinion to state these views, for I believe without an adequate record, juvenile proceedings will be constantly beset by constitutional objections. Such vulnerability is neither consistent with the high purpose of the statute nor the best interest of the juvenile, whether he be a delinquent or a dependent and neglected child. See Paulsen, Fairness to the Juvenile Offender (cited in the main opinion), 41 Minn. L. Rev. 547 (1957); Mack, The Juvenile Court, 23 Harv. L. Rev. (1909).