Richard Wayne LONG, and all other persons similarly situated, by and through his next friend, Henry Grady Long,

v.

The Hon. Romae POWELL, Individually, and as Judge of Fulton County Juvenile Court, et al.

Civ. A. No. C74–872A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 7, 1975.

**424**

Jeffrey I. Jacobson and Ellen W. Leitzer, American Civil Liberties Union, Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Dorothy Y. Kirkley, Asst. Atty. Gen., Atlanta, Ga., for England and Ault.

Charles L. Carnes, Carnes & White, Atlanta, Ga., for Powell.

Before BELL, Circuit Judge, and EDENFIELD and O'KELLEY, District Judges.

EDENFIELD, District Judge:

Lawsuits often arise as the result of incomplete planning, good intentions notwithstanding. When there arises a contingency for which inadequate provision was made (be it in a contract or statutory scheme), persons consequently harmed often turn to the courts for relief. The present action arose for pre-

cisely this reason, and the plaintiffs have brought this class action seeking declaratory and injunctive relief to redress alleged deprivations under color of state law of their Fifth, Sixth, and Fourteenth Amendment rights. More specifically, plaintiffs seek a declaration that Georgia Code Ann. § 24A–2304 is unconstitutional on its face and as applied, and seek to enjoin its further enforcement.

The statute, which is set out below,[1] deals with the power of the juvenile court judge to make a finding of fact and, consequent thereto, to commit a child[2] to an adult prison administered by the Department of Corrections/Offender Rehabilitation (hereafter "DCOR") after trial in juvenile court. This case was submitted for hearing before a three-judge court, pursuant to 28 U.S.C. § 2281 et seq., on defendants' motions to dismiss.

Plaintiff Long has brought this action individually and as class representative for all others similarly situated. At the time the complaint was filed, Long was seventeen years old. He had been arrested and tried six months earlier as a juvenile in Fulton County Juvenile Court before defendant Powell. As a juvenile under Georgia law, he was not accorded the full due process rights given adults (e. g., trial by jury or indictment by grand jury); but he was sentenced to the Georgia Industrial Institute, a prison for youthful criminal offenders administered by DCOR at Alto, Georgia. (Defendant England is warden of the Georgia Industrial Institute (hereafter "Alto") and defendant Ault is Commissioner of DCOR.) The complaint alleges that all the other inmates at Alto, except for plaintiff Long and the class he represents, were tried as

---

1. Ga.Code Ann. § 24A–2304 provides: *"Child not amenable to rehabilitation or treatment.* In the event a delinquent or unruly child is found not to be amenable to rehabilitation or treatment, the court may commit said child to the custody of the Department of Corrections."

2. Ga.Code Ann. § 24A–401(c) defines "child" as any individual who is "(1) under the age of 17 years, . . . (2) under the age of 21 years who committed an act of delinquency before reaching the age of 17 years and who has been placed under the supervision of the court or on probation to the court."

adults, and therefore were entitled to indictment by grand jury and trial by jury before being sentenced and incarcerated for offenses similar to those of Long and his class. Had Long been seventeen when he was arrested or had he been bound over to Superior Court for criminal prosecution pursuant to Georgia Code Ann. § 24A–2501, he would have been entitled to the same full due process rights enjoyed by his fellow inmates at Alto.

The complaint focuses on the many differences between incarceration at an adult prison like Alto and incarceration at a Youth Development Center which is administered by the Department of Human Resources (hereafter "DHR"). Under Georgia Code Ann. §§ 24A–2301 —2303, juveniles adjudged to be "deprived," "delinquent," or "unruly" may be ordered into institutional confinement; such a commitment is made to the custody of the Division of Community Resources of DHR. The apparent raison d'etre of these "Youth Development Camps" is to provide a controlled atmosphere of rehabilitation and treatment for children who have been adjudged to be in need of such an environment. These children are thus neither exposed to nor housed with adult felons who have committed serious crimes. The emphasis of the Youth Development Camp is to provide individualized rehabilitative treatment based upon psychological and aptitudinal testing; visiting, mail, and phone privileges are significantly more liberal at a Youth Development Camp than at an adult prison like Alto. On the other hand, plaintiffs allege, incarceration at Alto is essentially penal, with rehabilitative treatment only scarcely extant.

The core of the complaint is this: plaintiff Long and the members of his class have been confined with adult criminals in penal institutions pursuant to commitments made under § 24A–2304, despite the fact that they have been denied the full panoply of due process rights to which they would be entitled if they were tried and sentenced as adults.

Plaintiffs complain that the quid pro quo which ostensibly forms the basic premise of the juvenile justice system is violated by the terms of § 24A–2304; they complain that they have given up some of their due process rights to be tried and sentenced as juveniles, on the promise that the aim of the juvenile justice system is to promote rehabilitation and treatment, not to impose punishment for crime. Plaintiffs assert, therefore, that to be tried as a juvenile and then sentenced to an adult corrections facility is fundamentally unfair and violates their rights under the Sixth Amendment and under the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments. Plaintiffs contend further that the statutory terms "not amenable to rehabilitation or treatment" are vague, susceptible to arbitrary application, and lack ascertainable standards.

### 1. *Mootness*

Plaintiff Long and the other currently-known members of his class are no longer incarcerated at the adult prison at Alto. As the result of a decision of the Georgia Supreme Court in February, 1974, A. B. W. v. State, 231 Ga. 699, 203 S.E.2d 512 (1974), DCOR and DHR agreed to place juveniles committed to the custody of DCOR pursuant to § 24A–2304 in DHR facilities. Therefore, plaintiff is presently still in the legal custody of DCOR, but he is confined in a Youth Development Camp within the physical custody of DHR.

Defendants argue, therefore, that this action is moot since all § 24A–2304 juveniles are presently in the physical custody of DHR and will remain so unless DCOR builds an appropriate facility for them. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). It is argued that, in any event, § 24A–2304 juveniles will no longer be incarcerated with adult criminals and will receive the treatment and rehabilitation contemplated by the Juvenile Court Code.

This court does not agree that this case is moot merely because the

plaintiff is presently confined in a non-penal institution. The Supreme Court has only recently reaffirmed the rule that "'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.*, does not make the case moot.'" DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), citing United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), and a line of decisions. In *DeFunis,* the Court discussed in detail the elements of mootness. The Court observed that the unilateral cessation by the defendant, a state university law school, of certain of its admission practices could make the case moot only if it could be said with assurance that there did not exist any reasonable expectation that the practices would be reinstated. Otherwise, the defendant would be free to return to the prior practices. The Court stated that this fact alone would be enough to prevent mootness because of the public interest in having the legality of the practices settled.

*DeFunis* itself was held moot, not because of any voluntary cessation by the defendant, but because the plaintiff in that non-class action case was in the final quarter of his final year in law school. In this action brought by all present and future § 2304 juveniles, on the other hand, it cannot be said with assurance that the defendant will not return to prior challenged practices. It is true that the *A. B. W.* decision by the Georgia Supreme Court, construing § 2304 and § 2401 together, must be read as a gloss on § 2304; this court must accept that construction "as if written into the statutes themselves." Hebert v. Louisiana, 272 U.S. 312, 317, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926). It is also true that the May 1974 agreement between DCOR and DHR was executed in an effort to implement the *A. B. W.* decision. However, that agreement effects an arguably unconstitutional application of the statute.[3] Therefore, despite the fact that the agreement, as an attempt to follow the newly-construed statute, does not constitute a strictly voluntary cessation, there is nonetheless no reasonable assurance that the agreement will prevent the defendants from applying the law in a possibly unconstitutional manner. There is in fact a certain expectation to the contrary. Plaintiff's class therefore will remain vulnerable to at least some of the practices which it challenges in this action. This court does not even remotely imply that it impugns defendants' good faith in executing this agreement. The exhibits submitted as part of defendants' supplemental brief clearly demonstrate that within days after the *A.B.W.* decision defendants began inquiry into how to implement the implications of that decision. Nonetheless, this agreement is merely one between the current commissioners of two state agencies; it has the force of law only insofar as it satisfies the commissioners' official duty to obey and enforce the law, but not insofar as its terms may conflict with that law or with federal law. Consequently, this court is not relieved of the duty of adjudicating § 2304's constitutionality by virtue of this non-binding agreement which now commits § 2304 juveniles to the physical custody of DHR. *See* Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). Accordingly, we conclude that the case is not moot.

### 2. *Vagueness of Statutory Terms*

Plaintiffs contend that § 24A–2304 is unconstitutional because the terms "not amenable to rehabilitation or treatment" are vague, susceptible to arbitrary application, and lack ascertainable standards. In A. B. W. v. State, 231 Ga. 699, 203 S.E.2d 512 (1974), the Georgia Supreme Court placed a limiting construction on this language, holding that it means "that the child is found not to be amenable to rehabilitation or treatment *in a facility operated under direction of the*

---

3. The unconstitutionality of § 24A–2304 as applied is discussed more fully in section 4 of this opinion, *infra.*

*court or other public local authority* and not amenable to rehabilitation or treatment in a *facility operated by [DHR].*" 203 S.E.2d at 514 (emphasis added).

The challenged language and the construction given it in *A.B.W.* is similar to that found in the Federal Youth Corrections Act, 18 U.S.C. § 5010, setting forth the standard employed in determining whether an individual is amenable to treatment under that statute. It provides:

"(d) If the Court shall find that the youth offender will not derive benefit from treatment under [the Act], then the court may sentence the youth offender under any other applicable penalty provision."

The constitutionality of this provision has been upheld. Guidry v. United States, 433 F.2d 968 (5th Cir. 1970), and the Supreme Court has held that the trial court need state no supporting reasons for a determination made under it. Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974).

▮ The Georgia Supreme Court having made definite the meaning of the challenged language, and similar language having been upheld in the federal statute, we hold that the terms "not to be amenable to rehabilitation or treatment" in § 24A–2304 are not so vague as to deny due process or equal protection.

▮ This court also points to the analogous federal statute, 18 U S.C. § 5010(d), in holding that due process does not require that a separate hearing,

much less a jury trial, is required when the judge makes a finding of fact that the child is not amenable to treatment or rehabilitation in the system of the Juvenile Court. Even if this § 2304 finding of fact were still to result in the penalty of incarceration in an adult prison, such penalty would still be far less drastic than the punitive effect of a § 5010(d) determination. As the federal standard and procedure have survived constitutional attack, so also the § 2304 procedure does not offend Due Process.

### 3. *Facial Constitutionality*

In A. B. W. v. Georgia, *supra,* the Georgia Supreme Court was presented with an attack on the constitutionality of § 24A–2304, as well as an attack on the consistency of that section with § 24A–2401, which provides in part that "[a] child shall not be committed to a penal institution or other facility used primarily for the execution of sentences of persons convicted of a crime." The court read the two provisions as consistent:

"We hold that the General Assembly said that a juvenile may be committed to the custody of the Department of Corrections, but the Department of Corrections must not place such juvenile in one of its institutions used primarily for the incarceration of persons convicted of crimes." 203 S.E.2d at 513.

▮ It is apparent that the state supreme court interprets § 2304 subject to the general limitations of § 2401 and the rest of the Juvenile Court Code,[4] recog-

---

4. Juvenile proceedings in Georgia may be instituted by any person who has knowledge of the delinquency, deprivation, or unruliness of a child. Ga.Code Ann. § 24A–1602. The proceedings are initiated upon the filing of a petition in juvenile court. The petition need only allege facts which might support a finding of delinquency and may be made on the information and belief of the petitioner. Ga. Code Ann. § 24A–1603. A hearing on the allegations in the petition is conducted by the court without a jury, Ga. Code Ann. § 24A–1801(a), and the public is excluded from the hearing. Ga.Code Ann. § 24A–1801(c). A party charged with delinquency is entitled *inter alia* to the assistance of

counsel, Ga.Code Ann. § 24A–2001, to introduce evidence on his own behalf, to cross-examine witnesses, and is not required to make any self-incriminating statements. Ga.Code Ann. § 24A–2002.

If, after the hearing at which the child is found to be delinquent or unruly, the court makes the § 2304 determination that the child is not amenable to rehabilitation or treatment, the court may commit the child to DCOR. A juvenile proceeding order or adjudication is not a conviction of crime and does not impose any civil disability ordinarily resulting from a criminal conviction. Nor is a child who is determined to be delinquent or unruly to be committed to a penal institu-

nizing that the commitment of a juvenile to *any* authorized facility is never considered commitment for conviction of crime but is rather "only for rehabilitation or treatment . . . ." 203 S.E. 2d at 514. This interpretation having been made and, therefore, accepted as having been read into the statute itself, this court does not find that the statute is constitutionally offensive on its face. Section 2304 is now to be read as (1) proscribing the incarceration of juveniles with adult criminals and (2) directing that all juveniles will receive the treatment and rehabilitation contemplated by the Juvenile Code, regardless of which state agency has legal custody of them.

### 4. *Constitutionality as Applied*

A judicial finding that a statute is unconstitutional is often due to a gap between the real and the ideal—between the theoretical validity of the statute on paper and the daily application of that statute in operation. Such a gap existed after the Georgia Supreme Court's constitutional salvage of § 2304 in *A. B. W.,* *supra,* and this gap was recognized by Justice Ingram in his dissenting opinion in that case. He noted that the Department of Corrections (DCOR) did not at the present time have any facilities which could be used for juveniles committed to its custody pursuant to § 2304. Justice Ingram stated that he therefore did not see how the court's affirmance of the trial court's § 2304 commitment could be carried out. It was this aspect of *A. B. W.* which the plaintiffs characterized as "absolutely bizarre."

The existence of the gap apparently also failed to escape the attention of the

state attorney general's office, for within a week of the *A. B. W.* decision it notified DHR of its interpretation of the holding of the case. DHR was told that, although *A. B. W.* had not spelled it out, the only inference which could be drawn from it was that juveniles committed under § 2304 must be transferred to DHR. Attachment A, Supplemental Brief on Behalf of Defendants. This advice resulted three months later in the agreement between the commissioners of DCOR and DHR and the transfer of plaintiffs to the Youth Development Camp at Milledgeville, Georgia, operated by DHR.

■ Even plaintiffs applaud this agreement as modifying § 2304's former effect of committing juveniles to adult prisons. The agreement, however, does not go far enough, and consequently misapplies the statute as interpreted in *A. B. W.*[5] It is this faulty implementation of the newly-construed § 2304 which renders that statute unconstitutional as applied.

■ We find no constitutional violation in the mere commitment of a juvenile to the legal custody of DCOR. Defendants correctly point out that the constitutional question depends upon the nature of the incarceration, not upon the agency to whom the juvenile is committed. However, the differences in treatment do go beyond the mere question of which agency has technical custody of the juvenile, and therein lies the constitutional harm.

The most obvious deficiency in the DCOR/DHR agreement is that it flies directly in the face of the order committing the juvenile. Section 2304 envi-

---

tion or other facility used primarily for the execution of sentences of persons convicted of a crime. Ga.Code Ann. § 24A–2401.

A juvenile court judge may, however, under certain circumstances where the child is alleged to be delinquent based on conduct which is designated a crime or public offense, transfer the case for prosecution to the appropriate court having jurisdiction of the offense. Ga.Code Ann. § 24A–2501. Of course, if a juvenile case is transferred to a court with jurisdiction over crimes, the juve-

nile would be accorded all of the procedural safeguards which are normally attendant in any criminal proceeding.

5. Faced with the choice between concluding that the Georgia Supreme Court's reconciliation of the Georgia statutes was constitutionally deficient or concluding that the DHR/DCOR agreement misapplies § 2304 as interpreted in *A. B. W.,* we prefer the latter course.

sions a juvenile court judge committing a child to DCOR because the judge finds that the DHR facilities to which the child would ordinarily be committed are inadequate for the treatment, rehabilitation, and security which the child's case requires.[6] The DCOR/DHR agreement ignores that finding; DCOR assumes only technical custody of the child and then places the child in a DHR facility, *i. e.*, a facility judicially concluded to be inadequate for the child's rehabilitation and treatment. This disregard of the juvenile court's commitment order gives an ironic twist to Justice Fortas's observation that ". . . there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children." Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966). The irony lies in the fact that the harm is not that the child is tried as a juvenile and sentenced as an adult, but rather that he is sentenced as a child who is not amenable to ordinary juvenile treatment and then committed to an institution where he will receive just that—ordinary juvenile treatment.[7]

■ The procedure provided by the DCOR/DHR agreement thus violates the quid pro quo of the *parens patriae* theory underlying the juvenile justice system. *See generally* In re Gault, 387 U.S. 1, 14–29, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The plaintiffs have foregone some of the protections accorded adults in order to receive "careful, compassionate, individualized treatment." *Id.* at 18, 87 S.Ct. 1428, 18 L.Ed.2d 527, which is the asserted rationale of diminished procedural protections for juveniles. A commitment of a juvenile to an institu-

tion which is, by statutory definition, known to be inadequate to give that juvenile the treatment his case requires is fundamentally unfair. We reach that conclusion on the reasoning that if the state interest which is required to save the juvenile system from constitutional infirmity is not rationally served by the administration of that system, then to deprive the juvenile of rights to which he would otherwise be entitled as an adult is fundamentally unfair. To treat the juvenile proceeding as "civil," thereby denying the child certain important rights which would be available in a criminal proceeding—to proceed on the premise that the state is acting as *parens patriae*, promising that "the objectives are to provide measures of guidance and rehabilitation for the child and protection of society, not to fix criminal responsibility, guilt and punishment", *Kent, supra* at 554, 86 S.Ct. at 1054— and then to commit the child for rehabilitative treatment which the state *knows* to be inadequate, constitutes a violation of the child's right to due process. It is this implementation of § 24A–2304 which renders it unconstitutional as applied. *See generally* Baker v. Hamilton, 345 F.Supp. 345 (W.D.Ky.1972); Clark, "The New Juvenile Court Code of Georgia," 7 Ga.St.B.J. 409, 418 (1971).

■ Besides violating the terms of the commitment order, the DCOR/DHR agreement is an unconstitutional application of § 2304 also insofar as it imperfectly implements the Georgia Supreme Court's construction of that statute in A. B. W. v. Georgia, *supra*:

"In short, commitment to the Department of Corrections under Code Ann. § 24A–2304 is still for rehabilitation or treatment, such rehabilitation or treatment merely taking place

---

6. Defendant Powell's order committing plaintiff Long under § 2304 specifically stated: "The Court further finds the said child to be in need of further treatment and rehabilitation, but the Court finds that the said child having been committed to the Georgia Department of Human Resources by previous Order of this Court, is no longer ame-

nable to further treatment or rehabilitation in the system of the Juvenile Court." Exhibit "A" to Stipulations of Fact.

7. Defendant admits that "presently no difference in treatment results because of such a finding [under § 2304]." Supplemental Brief in Support of Defendants' Motion to Dismiss, at 5.

in a facility that provides superior security and protection.

"In any event, the commitment of a juvenile to any authorized facility is not commitment for conviction of a crime. Such commitment is only for rehabilitation or treatment and is subject to the limitations and conditions contained in Code Ann. § 24A–2701." 203 S.E.2d at 514.

The clear import of *A. B. W.* is, therefore, that the state may commit a child to the custody of DCOR, if it wishes, but that the child must be treated *as a child in all respects*. The Georgia Supreme Court has interpreted the purpose of a § 2304 commitment to be to afford the child rehabilitation and treatment "in a facility having greater security and protection measures than those facilities referred to in Code Ann. § 24A–2302(c, d) [*i. e.*, operated by DHR]." 203 S.E.2d at 514. With this sole exception, juveniles committed under § 2304 are to be dealt with no differently than other juveniles committed under the Code.

Yet the effect of the DCOR/DHR agreement is that other differences in treatment do exist:

*A. B. W.* expressly held that a § 2304 commitment is "subject to the limitations and conditions contained in Code Ann. 24A–2701." 203 S.E.2d at 514. Section 24A–2701(b) provides that an order of juvenile commitment continues in force for two years or "until the child is sooner discharged by the Division of Children and Youth [DHR]."[8] The DCOR/DHR agreement, however, specifically provides that a release from a Youth Development Camp to aftercare status requires the "concurrence" of DCOR, and that final "discharge from custody recommendations" will be submitted by DHR to DCOR for "final disposition." Stipulations of Fact, Exhibit "B". The agreement therefore violates § 2701(b) and would violate it even if

plaintiffs were in the physical, as well as the technical, custody of DCOR (such as would be the case if DCOR were ever to build facilities suitable for § 2304 juveniles). Section 2701(b) commits the discharge decision solely to DHR. For the agreement to require that § 2304 juveniles, unlike other juveniles, cannot be discharged without the concurrence or final approval of DCOR is fundamentally unfair and violates their right to equal protection of the laws.

With regard to the dozen juveniles who, prior to the May 20, 1974 DCOR/DHR agreement, were assigned to the adult prison at Alto when committed under § 2304, their records now reflect the fact that they have been incarcerated in an adult prison despite their juvenile status. Georgia Code Ann. Chapter 24A–35 regulates the files and records of juveniles, providing that juvenile court files and records are open to inspection only upon order of the court. Ga.Code Ann. § 24A–3501. Furthermore, law enforcement records and files concerning a juvenile are required to be kept separate from those of adults. However, with the consent of the court, inspection of the records and files is permitted for judicial, law enforcement, penal, and rehabilitation purposes. Ga. Code Ann. § 24A–3502. The court is required to seal the records and files of the juvenile proceeding if, after a hearing, it finds that the child has been rehabilitated, and that two years after his final discharge he has not been convicted of a crime, adjudicated delinquent, and is not subject to a pending proceeding. After sealing, inspection of the records is permitted only by order of the court upon petition of the person who is the subject of the records. Ga.Code Ann. § 24A–3504.

■ Despite these broad statutory protections of the juvenile's anonymity, the recorded fact that the juvenile has been incarcerated in an adult prison may

---

**8.** The Division of Children and Youth is the predecessor of the Division of Community Services, which is the division of DHR responsible presently for the administration of Youth Development Camps.

well have an adverse effect upon his life. The court finds no fault in the records showing that the juvenile was committed pursuant to a § 2304 finding, since there is nothing constitutionally offensive in committing a child who is in need of relatively greater security and supervision to a facility which can provide that in addition to the rehabilitative treatment he requires. Such a distinction among juveniles is not unreasonable, and there is no harm in the records indicating it. However, the connotations of a child having been committed to an adult prison go far beyond that reasonable distinction, and could disproportionately influence decisions made in later years by law enforcement officials, courts, penal institution officials, or parole boards.[9] Such a result denies these juveniles due process under the reasoning of *Kent* and *Gault, supra,* and is therefore to be avoided. Accordingly, the records of these juveniles who have been incarcerated in adult prisons must be expunged of any indication of that fact.

 With regard to juveniles committed pursuant to § 2304 as implemented by the new DCOR/DHR agreement, their records must likewise not reflect incarceration in adult prisons pending DCOR's "delivery" of the juveniles to the DHR facility. Since DCOR has no juvenile facilities even for temporary physical custody of juveniles during whatever administrative processing may be required, it follows that § 2304 juveniles will be housed with adult criminals at least temporarily. Such temporary custody in an adult prison for a reasonably short time pending transferral to a Youth Development Camp does not offend due process, *cf.* Hamilton v. Chaffin, 506 F.2d 904 (5th Cir., 1975), but

the juvenile's records, if they are to indicate that fact at all, must clearly reflect that such custody was temporary and only pending processing.[10]

### 5. *Defendant Powell's Motion to Dismiss*

 Defendant Powell is the juvenile court judge who ordered the commitment of plaintiff Long pursuant to § 2304. Judge Powell contends that she was acting within her judicial capacity in performing that act, and is therefore neither a necessary nor proper party. However, the declaratory and injunctive relief sought by the plaintiffs here is equitable relief, and there is ample authority for the proposition that a judge is not immune from being ordered to render equitable relief in a civil rights action brought pursuant to 42 U.S.C. § 1983, so long as there is no real interference with the discretionary functions of the judge. *See* Cheramie v. Tucker, 493 F.2d 586 (5th Cir. 1974), and cases cited at n. 6. This court having concluded that § 24A–2304 is unconstitutional as applied, there is little, if any, possibility that our injunction will upset the Judge's discretionary functions. Moreover, our declaratory judgment that § 2304 is unconstitutional as applied renders injunctive relief with respect to Judge Powell unnecessary. Accordingly, her motion to dismiss will be denied.

### *Summary*

Georgia Code Ann. § 24A–2304 provides that juveniles determined by the juvenile court "not to be amenable to rehabilitation or treatment" within the juvenile court system's ordinary facilities, may be committed to the custody of the Department of Corrections/Offender Re-

9. Plaintiff's counsel at oral argument asserted that inspection of juvenile records is not confined to those persons named in the statute, but that records are routinely made available to employers and others. There being no evidence in the record to support such an assertion, we decline to consider it, leaving any such alleged violations of the Juvenile Court Code to appropriate state administrative or judicial remedy.

10. The named plaintiff alleges that he spent forty days in the Fulton County Jail, an adult facility, before DCOR managed to transfer him to Alto. This court does not consider forty days to be a "reasonably short time," and such delay in transferring a juvenile to a DHR facility would, in the judgment of this court, violate due process as well as the legislative intent of § ·24A–2401.

habilitation. The Georgia Supreme Court upheld that statute's constitutionality, construing it to mean only that such a juvenile may be committed to a facility of superior security and protection, there to receive individual rehabilitative treatment like other juveniles. In an effort to bring their conduct within the scope of the state supreme court decision, DCOR and DHR agreed that DCOR should retain legal custody over the juvenile and make decisions as to release, but that DHR should assume physical custody of the juvenile in one of its own facilities.

The case is not moot since there is a continuing harm to plaintiffs (both present and future members of the class) flowing from the unconstitutional implementation of the statute through the DCOR/DHR agreement.

The terms used in the statute are not vague, and are neither unusually susceptible to arbitrary application nor lacking in ascertainable standards.

The statute is constitutional on its face, the limiting construction of the Georgia Supreme Court in A. B. W. v. Georgia, *supra,* having become a gloss on the statute.

The statute is unconstitutional as applied by the DCOR/DHR agreement because it provides for commitment of the § 2304 juvenile to a DHR facility, in direct contradiction of the finding and order of the juvenile court, thus denying the juvenile his right to due process. The agreement also imperfectly implements *A. B. W.* since it gives DCOR either concurrent or final decision-making power as to release, in violation of Georgia Code Ann. § 24A–2701(b), thus denying the juvenile his right to equal protection of the laws. Furthermore, the § 2304 juvenile's records may reflect that he has been incarcerated in an adult prison, with serious potential collateral consequences, thus also running afoul of the juvenile's due process rights.

Accordingly, it is hereby ordered and adjudged:

(1) That Georgia Code Ann. § 24A–2304 is unconstitutional as applied, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States;

(2) That defendants shall not commit any juvenile to incarceration in an adult penal institution, except for a reasonably short time pending administrative processing and transfer to an appropriate facility;

(3) That defendants shall not commit a juvenile pursuant to § 24A–2304 to an ordinary DHR facility without making provision for the greater protection, security and rehabilitative treatment mandated by the juvenile court's determination that he is not amenable to ordinary treatment and rehabilitation. Such provision might, for example, take the form of separate housing and more individualized programs;

(4) That defendants shall expunge from the records of the juveniles committed to adult prisons prior to the May 20, 1974 agreement any notation of that fact. Similarly, with regard to future members of the plaintiff class who are committed to the custody of DCOR pursuant to § 24A–2304, if there is any record made of an interim confinement in an adult prison pending transfer to the physical custody of DHR, that record must clearly reflect the temporary nature of the confinement;

(5) That, pursuant to Georgia Code Ann. § 24A–2701(b), the decision to release a § 2304 juvenile from a Youth Development Camp to aftercare status, or to grant a final discharge, shall rest exclusively with DHR, the agency directly involved in the juveniles' treatment plans; and

(6) That defendants' motions to dismiss are denied.