Francisca OSORIO et al., Plaintiffs,

v.

Carlos RIOS et al., Defendants.

Evelyn HERNAIZ et al., Plaintiffs,

v.

Norberto GARCIA et al., Defendants.

Angela RODRIGUEZ et al., Plaintiffs,

v.

Carlos RIOS et al., Defendants.

Juana NIEVES et al., Plaintiffs,

v.

Carlos RIOS et al., Defendants.

Civ. Nos. 74–240, 74–924, 75–322 and 75–938.

United States District Court, D. Puerto Rico.

Feb. 26, 1976.

Before CAMPBELL, Circuit Judge, TOLEDO, Chief Judge, and PESQUERA, District Judge.

## OPINION

LEVIN H. CAMPBELL, Circuit Judge.

This class action is brought by certain juvenile offenders in Puerto Rico who were placed in adult jails by judicial order. Plaintiffs contend that 34 L.P.R.A. § 2007(c), a statute allowing courts to put juvenile offenders in adult jails or prisons, violates the Constitution of the United States, and is therefore invalid. The challenged portion of the statute reads as follows:

"No child shall be held in a police station, lockup, jail, or prison, except that, by order of the Judge, setting forth the reasons therefor, a child over 16 years of age whose behavior or condition is such as to endanger his safety or welfare or that of other inmates in the custody center for children, may be put in jail or other place of detention for adults, provided it is a room or apartment entirely separated from the adults confined therein."

Plaintiffs have invoked the jurisdiction of this three-judge court under 28 U.S.C. §§ 1331, 1332(3) & (4) and 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

A judge of this court has certified as members of the plaintiff class all juveniles who are or will be incarcerated in adult penal institutions pursuant to the above-quoted provision contained in Section 2007(c), Title 34, Laws of Puerto Rico Annotated. We have approved, and we confirm, that order, dated November 4, 1975.

The facts before us, largely undisputed, will be found in (1) stipulations of the material histories of each of the individual plaintiffs; (2) testimony of Dr. Salvador Santiago, a clinical psychologist, called by plaintiffs, who, among other matters, described the conditions for detention of juveniles in the San Juan District Jail and elsewhere;

Lcda. María Laura Colón, Puerto Rico Legal Services, Inc., Hato Rey, P. R., for plaintiffs.

Secretary of Justice, Dept. of Justice, Commonwealth of Puerto Rico, San Juan, P. R., for defendants.

(3) testimony of Judge Gladys Lasa Diaz, Chief Judge and General Administrator of the Juvenile Court System in Puerto Rico; and (4) certain exhibits.

We adopt and include as a part of our findings herein the stipulated histories of the individual plaintiffs.

The individual plaintiffs are persons who come within the special jurisdiction of the superior court over offenders under the age of 18. At one or another time the superior court has ordered that each be held either in San Juan District Jail (La Princesa) or Anexo de Miramar, a facility for sentenced young adult offenders. Their subsequent incarceration in these adult facilities lasted from a month or so to eleven months, and, in some cases, was ended only by temporary order of this court placing the child in a juvenile facility.

In his testimony and report, Dr. Santiago described conditions existing at the two adult jails in contrast to the Industrial School for Minors, a juvenile facility having some programs and opportunities. It is clear, and we so find, that juveniles held at the two adult institutions receive no training and participate in no educational, recreational or rehabilitative programs of any sort. Their conditions of confinement are no better, and may even be worse, than those of adult prisoners.

La Princesa, built in 1847, was described as completely obsolete, and suffering from general overcrowding. It has only the most limited and cramped accommodations for juveniles, who are housed in a dormitory, sixteen or seventeen to a small room. Contrary to the provision in § 2007(c), mingling with the adult population is, in fact, permitted. Anexo is similarly overcrowded; in a typical juvenile dormitory, there may be thirty beds in a 25 x 40 foot room. The juveniles are again not completely separated from the adults. Dr. Santiago described the crowding within this limited space as reaching dangerous levels. To compound the problem, there are no athletic or recreational programs to speak of at either institution, so the juveniles must spend most of their time in their crowded dormitories. At La Princesa, there is one basketball court, available to the entire inmate population for a total of two hours per day, and one patio, to which the entire population, including the juveniles, has access for two hours per day. At Anexo, there are no sports at all for the juveniles. There are no radios or television sets in the juveniles' dormitories at La Princesa, and only one television set for all the juveniles at Anexo.

At both institutions, the medical facilities are minimal. La Princesa employs, for all the inmates, one doctor two hours per day and one dentist eight hours per week. A doctor visits Anexo three times per week, with no medicines or equipment available.

At La Princesa, juveniles who present discipline problems are put in 4 x 8 foot cells located in the basement of the jail, with sometimes as many as three inmates occupying the same cell because of overcrowding. At Anexo, those juveniles who are sexually intimidated by the adult inmates often request to be sent to solitary confinement for protection. On one visit Dr. Santiago found that all the solitary cells were occupied by minors for that reason.

Judge Gladys Lasa testified, and we so find, that only a small percentage of juvenile offenders, around 3%, were ever confined in adult jails; and she pointed to guidelines designed to guard against abuse of the statute. The guidelines are not, however, binding on individual judges.

The law of Puerto Rico, like that of most jurisdictions,[1] classifies accused persons under the age of 18 differently from adults. Act of June 23, 1955; 34 L.P.R.A. §§ 2001 et seq. Adult criminal jurisdiction attaches in such cases only if the judge, after hearing, expressly waives juvenile jurisdiction, which may be done only if the child is over 16 and under 18. § 2004. Juvenile jurisdic-

---

1. Puerto Rico's present law was patterned on a 1949 Juvenile Court Act prepared by the National Council on Crime and Delinquency. The aims and philosophy of juvenile codes of this type are discussed in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). *See also Commonwealth v. Fisher,* 213 Pa. 48, 62 A. 198 (1905).

tion has not been waived over the individual plaintiffs. They are therefore subject to juvenile jurisdiction only; they are not deemed to be criminals or convicts; and the judicial proceedings which take place concerning them are not of a criminal character. § 2011. Fingerprints or photographs are not to be taken and records are to be kept separate from those of adults; juveniles have no right to bail. § 2007(d), (e) & (f).

The philosophy of Puerto Rico's juvenile laws is summarized in the so-called statement of motives accompanying the Act of June 23, 1955, No. 97, p. 504, which includes the following:

> "But, aside from other means which, in terms of social prophylaxis, may be resorted to in tackling and solving this problem, it also calls for some legal device which will enable the judicial authority to exercise, in relation with maladjusted and neglected children and with their parents or persons in charge of their care and support, those functions inherent in its condition of 'parens patriae', without its having to consider the child as a delinquent, save in those exceptional cases in which the welfare of the community or of the child may call for the treatment of a child over 16 and under 18 years of age as an adult."

Plaintiffs complain of being jailed with adults notwithstanding the noncriminal nature of juvenile jurisdiction. They argue as follows: (1) That "treatment" is the *quid pro quo* for a juvenile's loss of the fundamental rights afforded adults such as a jury trial; hence when attempts to treat are abandoned, as by placing the juvenile in an adult jail offering no rehabilitative programs, the informal juvenile procedures no longer provide due process under the four-

teenth amendment. (2) That § 2007(c) does not afford even rudimentary due process since a juvenile may be confined without notice and hearing. (3) That by confining the juvenile as an adult, but denying him the same procedures that Puerto Rico affords to all adults such as a preliminary hearing and bail, Puerto Rico is denying the juvenile equal protection of the law in violation of the fourteenth amendment. (4) That confining juveniles in adult jails amounts to cruel and unusual punishment in violation of the eighth amendment.

■  Before turning to these matters,[2] we note that § 2007(c) is being interpreted in practice to allow confinement with adults at any time while the juvenile remains under the supervision of the court. § 2003. This is so even though the statutory language permitting the jailing of a juvenile over 16 "whose behavior or condition is such as to endanger his safety or welfare or that of other inmates in the custody center for children", appears in a portion of the juvenile law that deals with the child's custody before his case is heard on the merits. A latter section, § 2010, entitled "Resolution", does not authorize imprisoning a child in an adult institution: rather, it provides for commitment to "an institution suitable for the treatment of children". One might assume, therefore, that § 2007(c) contemplates adult confinement only as a temporary expedient before resolution of the case—in other words, that it authorizes only brief "pre-trial" confinement.

However, the evidence before us indicates that courts acting under § 2007(c) indiscriminately commit juveniles to adult institutions after as well as before resolution. Judges apparently interpret the statute as empowering imprisonment whenever deemed necessary.[3] For example, plaintiff

---

**2.** We find no merit in defendants' contention that the court lacks jurisdiction under 42 U.S.C. § 1983. *Ortiz v. Hernandez Colon,* 511 F.2d 1080 (1st Cir. 1975), *appeal filed,* 421 U.S. 903, 95 S.Ct. 1550, 43 L.Ed.2d 770 (1975).

**3.** While this broad reading of § 2007(c) may arguably be justified by the statutory language, some authorities have been taking other actions that clearly violate the statute. For ex-

ample, juveniles are often fingerprinted in violation of § 2007(e), and many judges set forth either no reasons for commitment to an adult facility, or, if reasons are set forth, merely a repetition in *haec verba* of the statutory standards. § 2007(c). While the Chief Judge has attempted to curtail the latter violations, her authority is limited.

de Jesus Osorio, following revocation of his probation, was held in adult jails for the better part of a year, and was transferred to a juvenile facility only upon intervention of this court. We conclude, therefore, that § 2007(c) is commonly understood by Commonwealth authorities to allow discretionary incarceration after, as well as before, resolution, as long as juvenile jurisdiction is retained.

> 1. *Whether due process is violated because adult imprisonment is "punitive" rather than "rehabilitative".*

Plaintiffs argue broadly that commitment to adult jail is a criminal sanction that may not be imposed pursuant to the informal *parens patriae* procedures of the juvenile law. The rehabilitative goals of the juvenile laws are alone said to justify the informal procedures used. *See In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). Since the adult jails offer nothing in the way of training or guidance, juvenile procedures are alleged to be inadequate precursors to confinement therein, and therefore to violate due process.

■ While this approach is not without some support in lower federal and state cases,[4] we are not convinced that the Constitution forbids all provision for jailing disruptive juveniles in adult jails. A juvenile system, no matter how idealistic, has to cope with difficult, sometimes dangerous youths; and there may be compelling reasons not to require taxpayers to support a duplicate set of secure detention facilities everywhere, as might be necessary if juvenile escapees or security problems could never be housed, no matter how briefly, in an adult facility. The *quid pro quo* for juvenile procedures is not, moreover, "rehabilitation" alone. Even those juveniles who are detained in adult jails escape legal disabilities imposed upon adult offenders, such as a criminal record. *See McKeiver v.*

*Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *U. S. ex rel. Murray v. Owens*, 465 F.2d 289 (2d Cir. 1972), *cert. denied*, 409 U.S. 1117, 93 S.Ct. 930, 34 L.Ed.2d 701 (1973). Thus we do not believe, as a general proposition, that all confinement with adults is so incompatible with juvenile procedures as to render the procedures deficient under the due process clause. Rather, in determining whether there is due process of law, we think the proper inquiry is whether § 2007(c), providing for the jailing of juveniles in adult facilities, is accompanied by procedures sufficient to afford due process in the context presented, having regard both for the purpose of the juvenile laws and the reasonable needs of society. *See Gagnon v. Scarpelli*, 411 U.S. 778, 789, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Sarzen v. Gaughan*, 489 F.2d 1076, 1083 (1st Cir. 1973). It is to this question that we turn in the following section.

> 2. *Whether § 2007(c) procedures afford due process.*

Section 2007(c) makes no provision for notice to the child, and for a hearing, before a judge may order him detained in an adult facility. In practice judges may enter such orders *ex parte* on the basis of a conversation with a social worker. Furthermore, there are no statutory limits to the period of confinement, nor does it seem to be customary to provide any definite limit.

■ For the purpose of determining what procedures are constitutionally "due", we see a wide difference between brief periods of confinement intended, for example, to hold the child until transfer to a more suitable facility, and protracted confinement such as occurred in the case of plaintiff De Jesus Osorio. Even if protracted confinement in an adult jail did not violate equal protection (see Section 3 be-

---

4. *Nelson v. Heyne*, 491 F.2d 352 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Long v. Powell*, 388 F.Supp. 422 (N.D.Ga.1975), *judgment vacated*, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); *Morales v. Turman*, 383 F.Supp. 53 (E.D.Texas 1974);

*Martarella v. Kelley*, 349 F.Supp. 575 (S.D.N.Y. 1972); *Inmates of Boys' Training School v. Affleck*, 346 F.Supp. 1354 (D.R.I.1972); *State v. Owens*, 197 Kan. 212, 416 P.2d 259 (1966); *In re Rich*, 125 Vt. 373, 216 A.2d 266 (1966).

low), we believe it could not, compatibly with due process, be ordered without some form of notice and hearing, neither of which is called for by the statute. See *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *In re Gault,* supra; *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).

■ In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court required a finding of probable cause by an impartial magistrate to precede any substantial pretrial confinement, though it did not necessarily require a hearing as such.[5] *Gerstein* is not, however, squarely on point as it dealt with adult pretrial detention procedures which, traditionally, are ameliorated by other devices such as a bail hearing and bail itself. Here bail is forbidden, § 2007(d), and, as we have seen, the statute as applied authorizes more than confinement pretrial. We are dealing with removal of the child on a permanent or semi-permanent basis from the *parens patriae* juvenile world to the punishments of the adult criminal world. Such removal affects the child's liberty as protected by the fourteenth amendment, and accordingly requires, we think, procedural safeguards beyond the very meager ones which § 2007(c) affords. While there is no precedent precisely on point, we have little doubt that § 2007(c) as presently written and applied violates the due process clause of the Constitution insofar as it permits a juvenile offender to be jailed indefinitely in adult prisons without some form of notice and a hearing prior to the crucial confinement decision.

Were the statute limited—as it is not—so as to authorize only brief emergency incarceration, existing *ex parte* procedures

might, on the other hand, be enough. *See Long v. Powell,* 388 F.Supp. 422, 431 (N.D. Ga.1975), judgment vacated, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975). In such circumstances, the child would remain for all intents and purposes within the juvenile system; his brief interlude in an adult jail would not, we think, give rise to a need for additional procedures beyond those presently afforded.

3. *Whether confinement in adult facilities without adult process was a denial of Equal Protection.*

Plaintiffs' equal protection argument is that as they are being punished like adults, they should receive the benefit of the same procedures Puerto Rico gives adults. Under the Puerto Rican Constitution, a person is entitled to a jury trial; and before conviction "every accused shall be entitled to be admitted to bail". Art. II § 11. Incarceration prior to trial is limited to six months. *Id.* Persons charged with felonies are entitled to trial-type preliminary hearings. 34 L.P.R.A. App. II R 23.

As we have stated above, we are unimpressed with the suggestion that merely by placing a child briefly in an adult lockup the state loses all right to classify him in other ways separately from adult offenders. One can envision many circumstances where the short-term use of an adult detention facility is not incompatible with the separate purposes of the juvenile law. The aim of such short-term utilization of adult facilities is only to restrain the child pending a settled disposition of his case, not punishment, and juveniles no less than adults may require restraint of this nature.

■■ On the other hand, if a child is placed in an adult jail and left there indefinitely—without even the pretense of rehabilitative programs, as in the case at the

---

5. Under Puerto Rican law, juveniles may be detained for up to 30 days and for just cause even longer, before it is determined that there is probable cause to issue a complaint, which may be done without a preliminary hearing. 34 L.P.R.A. App. I R 5.1, 5.3. Thereafter, a hearing on the charge, at which the child is entitled to be present and to have counsel, may

be held *in camera* in the judge's chambers. *Id.* R 9. *See also* 34 L.P.R.A. § 2009. Procedures throughout are characterized by great flexibility, with the judge exercising almost total power over the person of the child. The judge may at any time modify any order or resolution regarding a child. *Id.* § 2013.

two adult institutions mentioned herein—it becomes impossible to distinguish meaningfully between his position and that of an adult inmate. True, the child does not receive an adult "record" but, standing alone, we do not think that that is enough to justify depriving the child of the procedural protections afforded an adult where the child, in all other respects, is jailed like a common criminal in an adult jail.

We think that if a juvenile is to be jailed like an adult under the conditions revealed in this proceeding for a substantial, as opposed to a relatively brief, period, the juvenile is denied equal protection of the law unless afforded, prior to incarceration, the same basic procedures granted to adults. In *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), the Supreme Court held that when New York afforded jury review to all others civilly committed, it denied equal protection by civilly committing without jury review those completing a prison sentence. Here, Puerto Rican law allows the court to waive juvenile jurisdiction, permitting authorities to proceed against a juvenile as if an adult criminal. § 2004. In such event, the juvenile becomes entitled to the same safeguards and benefits offered to adults—bail, a preliminary hearing, jury trial, and so on. This waiver procedure was not followed for plaintiffs, and we think that Puerto Rico must avail itself of a waiver in those cases where adult-style punishment is deemed to be the best course. Since § 2007(c) as now written and interpreted makes no distinction between long and short-term confinement, we hold that it violates the equal protection clause of the United States Constitution insofar as it permits a child to be punished indistinguishably from an adult, but without the same procedural safeguards.

### 4. *Whether imprisonment is cruel and unusual punishment.*

Plaintiffs argue that the incarceration of juveniles in adult penal institutions is a cruel and unusual punishment in violation of the eighth amendment. They contend that incarceration in adult jails for indeterminate periods of time is disproportionate to the "offenses" with which the plaintiffs are charged and consequently violates the eighth amendment, *citing Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). They also assert that the conditions at the adult institutions are so inadequate and indeed harmful as to amount to cruel and unusual punishment.

We do not hold, as a general proposition, that the incarceration of juveniles in adult institutions is *per se* a cruel and unusual punishment. "What constitutes cruel and unusual punishment is not easy to define with precision." *Morris v. Travisono,* 528 F.2d 856, at 858 n. 4 (1st Cir., 1976). In *Robinson v. California, supra,* the Supreme Court, confronted with a California statute which punished narcotics addiction as a crime, held the statute violative of the eighth (and fourteenth) amendment for imprisoning as a criminal someone who may never have been guilty of irregular behavior, recognizing narcotics addiction as an illness that may be contracted "innocently or involuntarily". *Id.* 370 U.S. at 667, 82 S.Ct. 1417. However, in the instant case in contrast, it cannot be said that any form of detention was unwarranted, and we are not prepared to rule that a jurisdiction acts in violation of the eighth amendment because it choses to jail persons over 16 years of age with adults. We therefore hold that custody under minimally humane conditions in adult jails is not in and of itself violative of the eighth amendment.

There is, however, disturbing evidence that conditions in these adult institutions may not, in fact, be minimally humane. Dr. Salvador Santiago, based on visits to La Princesa and Anexo de Miramar, reported many deficiencies in the two institutions, citing fifteen different areas. Some of them were of a very serious character and would, if substantiated, raise grave questions under the eighth amendment.

However, the present proceeding is mainly concerned with the constitutionality of § 2007(c) itself, not of the conditions at different institutions, and we are satisfied

that § 2007(c) is, in fact, unconstitutional wholly apart from eighth amendment considerations. The Commonwealth, moreover, was not given an opportunity to rebut Dr. Santiago's testimony, and no evidence was presented as to the details of the individual plaintiffs' confinement. We accordingly do not pursue the eighth amendment issue further at this time, although should the Commonwealth propose to continue to utilize adult facilities for juveniles in any respect, it must obviously take pains to see that constitutionally adequate conditions exist.

### RELIEF

Having held that § 2007(c) is unconstitutional because, as written and applied, it violates the due process and equal protection clauses of the federal Constitution, we turn to the question of relief.

■ We have sought to indicate in what manner we find the present statute unconstitutional, but have not defined what length periods of confinement in adult facilities might be constitutional, nor have we considered other provisions for the rights of a youthful offender that might ensure the constitutionality of a revised statute. Quite obviously, more than one formula may be adopted, and it will be the interplay between the parts as much as any single provision that will make for the constitutionality of the whole. Revision or reinterpretation of § 2007(c) so as to comply with Constitution is a task properly left to the legislative and perhaps judicial authorities of the Commonwealth of Puerto Rico.

In the meantime, an injunction must enter enjoining confinement of juveniles in adult institutions under § 2007(c). However, for the protection of the public until the Legislature or other appropriate authority can give its attention to the statute, we are inserting in the injunction a proviso allowing confinement in adult institutions upon a certification of the judge that an emergency exists, provided such adult confinement does not exceed a period of one week in any case, provided the individual circumstances necessitating confinement are set forth by the judge in writing, and

provided that the juvenile is strictly separated from adults.

This limited provision for confinement in adult institutions is not intended as a substitute for remedial action by Puerto Rican authorities. The injunction will be terminated upon presentation of an appropriate modification of § 2007(c); and in limiting confinement to one week, we do not mean to intimate that some alternative reasonable period or periods might not be constitutional if embodied in a legislative or regulatory formulation that takes proper account of the various constitutional requirements.

*So ordered.*